ELECTRONICALLY FILED
9/2/2025 12:13 PM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-07959-31

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
SNOHOMISH COUNTY

| | |
|---|---|
| COLBY HUTTON, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PAPA JOHN'S USA, INC.,<br><br>Defendant. | Case No.: 25-2-07959-31<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Colby Hutton, on his own behalf and on behalf of others similarly situated, on information and belief except to his own experiences and matters of public record, complains of Defendant Papa John's USA, Inc. as follows:

## I. INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2. Among other things, CEMA prohibits transmitting a commercial email to a Washington resident's email address that "[c]ontains false or misleading information in the subject

line." RCW 19.190.020(1)(b).

3. Defendant Papa Johns USA, Inc. ("Papa John's"), does just what CEMA prohibits.

4. Papa John's bombards Washington consumers, including Plaintiff, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with Papa John's marketing for fear of missing out and chokes consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6. And through this deceptive time-sensitivity, Papa John's falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7. Plaintiff challenges Papa John's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

8. The Court has jurisdiction of this case under RCW 2.08.010.

9. Venue is proper in Snohomish County under RCW 4.12.020(3) because Plaintiff's cause of action, or some part thereof, arose in Snohomish County.

## III. PARTIES

10. Plaintiff Colby Hutton is a resident of Snohomish County, Washington.

11. Defendant Papa John's USA, Inc., is a corporation incorporated in Kentucky with its principal place of business located at 2002 Papa John's Boulevard, Louisville, KY 40299, and a registered agent in the State of Washington of: CT Corporation System, 711 Capitol Way S, Suite

204, Olympia, WA 98501-1267.

## IV. FACTUAL ALLEGATIONS

**A. CEMA protects Washington consumers from deceptive spam emails.**

12. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14. In the nearly three decades since, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15. And the problems are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19. Consumers therefore routinely "consent" to receive flurries of commercial emails

which they did not meaningfully request and in which they have no genuine interest.

20. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

26. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from*

*U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27. CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of Papa John's marketing emails make false time scarcity claims.**

29. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patters to Light*, *supra* para. 26, at 22.

31. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 26, at 26.

32. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

33. Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

34. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

35. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

36. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

37. These false time scarcity claims are a staple of Papa John's email scheme to corral consumers to purchase its products, as the following examples demonstrate:

38. **Urgent Spam Emails.** Papa John's is practiced in this trick of luring in consumers through an urgent subject heading that does not reflect the true availability of the deal itself, as these examples demonstrate:

39. For example, on January 28, 2025, Papa John's blasted consumers with an email with the subject heading: "Two Pizzas, One Price — Today Only!" But that deal was not for that day only.

40. On February 4, 2025, Papa John's spammed another email to consumers with the subject heading: "BOGO Tuesday – Buy One, Get One FREE! 🔥"

41. Upon information and belief, "BOGO" means "buy one, get one."

42. In other words, mere days after sending an email advertising one deal as limited to that day only, Papa John's spammed consumers with precisely the same deal. The first email creates a false sense of urgency for the consumer.

43. This strategy of creating false urgency for its deals has continued.

6

44. On April 3, 2025, Papa John's sent an email with the subject heading: "Time's running out to get a FREE large 1-topping pizza ⌛"

45. The use of the hourglass emoji in the subject heading of the April 3 email only enhances the false sense of urgency that "time's running out."

46. The next day, April 4, 2025, Papa John's sent out another email with the subject heading, offering that same deal: "Don't miss out on a FREE large 1-topping pizza 😄"

47. But consumers did not need to worry about "missing out" because, on April 5, 2025, Papa John's sent another email with the subject heading: "Last call for a FREE large 1-topping pizza 🗣."

48. But (again) this wasn't "last call."

49. The next day, on April 6, 2025, Papa John's sent another email with the subject heading: "Last chance to get a FREE large 1-topping pizza 🚨"

50. The use of the red-light alarm emoji further heightened the sense of urgency invoked by the April 6 email's statement that this was the "last chance."

51. But (again) this wasn't the last chance for that deal.

52. On April 7, 2025, Papa John's blasted consumers with another email with the subject heading: "🚨 Offer extended: Get a FREE large 1-topping pizza 🚨"

53. As these emails show, Papa John's engages in an email marketing strategy whereby it creates a false sense of urgency, misrepresents when sales end, and then arbitrarily extends those sales to further pull in consumers with subject headings that are just not true.

54. These and other examples of Papa John's commercial emails whose subject lines contain false or misleading statements are attached to this Class Action Complaint as Exhibit A.

C. **Papa John's knows when it sends emails to Washington residents.**

55. A sophisticated commercial enterprise, like Papa John's, who is engaged in

persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly with its knowledge.

56. First, the sheer volume of Papa John's email marketing put it on notice that Washington residents would receive its emails. Since the beginning of 2025, Papa John's has been blasting out marketing emails at a rate averaging roughly more than one email per day.

57. Second, Papa John's may obtain location information tied to email addresses when consumers make purchases from Papa John's through digital platforms, including Papa John's website, or otherwise self-report such information to Papa John's.

58. Third, Papa John's may obtain location information tied to email addresses by tracking the IP addresses of devices used to open Papa John's emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

59. Specifically, Papa John's appears to use the platform Braze to manage its email marketing campaigns. Platforms like Braze allow Papa John's to identify anyone who receives its marketing emails, determine who opens them, and track who clicks on any links within them.

60. Papa John's is likely able to infer the general geographic location of recipients by state based on their IP address at the time of email open or link click.

61. Fourth, Papa John's may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

62. Fifth, Papa John's may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect

consumers' email addresses to their physical locations, among other identifiers.

63. Sixth, Papa John's may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

64. It is thus highly probable that a seller of Papa John's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

D. **Papa John's violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

65. Papa John's has bombarded Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of his right to be free from such annoyance and harassment under CEMA.

66. Plaintiff received the email promotions described in paragraphs 44, 46, 47, 49, and 52 above.

　　a. Plaintiff Hutton received the April 3, 2025, email with the subject heading: "Time's running out to get a FREE large 1-topping pizza ⏳ "

　　b. Plaintiff Hutton received the April 4, 2025 email with the subject heading: "Don't miss out on a FREE large 1-topping pizza 😃 "

　　c. Plaintiff Hutton received the April 5, 2025 email with the subject heading "Last call for a FREE large 1-topping pizza 🗣 "

　　d. Plaintiff Hutton received the April 6, 2025 email with the subject heading: "Last chance to get a FREE large 1-topping pizza 🚨 "

　　e. Plaintiff Hutton received the April 7, 2025 email with the subject heading " 🚨 Offer extended: Get a FREE large 1-topping pizza 🚨 "

67. These emails were false or misleading in violation of CEMA, for misrepresenting the timing of the deals, as further described in ¶¶ 3–56.

68. These emails contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V. CLASS ALLEGATIONS

69. Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

70. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

71. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

72. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

73. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

74. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act,

RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

75. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

76. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection and class action litigation.

77. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

78. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

79. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action on as a class presents no special difficulties.

Smith & Dietrich Law Offices PLLC
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

## VI. CLAIMS TO RELIEF

### First Claim to Relief

**Violation of the Commercial Electronic Mail Act, RCW 19.190.020**

80. Plaintiff incorporates and realleges paragraphs 1–68 above.

81. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

82. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

83. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

84. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

85. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

86. For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

## Second Claim to Relief

## Violation of the Consumer Protection Act, RCW 19.86.020

87. Plaintiff incorporates and realleges paragraphs 1–68 above.

88. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

89. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

90. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

91. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

92. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

93. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

94. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

95. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

96. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

97. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII. PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

RESPECTFULLY SUBMITTED AND DATED this 2nd day of September, 2025.

By: /s/ Walter Smith
Walter Smith, WSBA #46695
**Smith & Dietrich Law Offices, PLLC**
1226 State Avenue N.E., Suite 205
Olympia, WA 98506
Telephone: (360) 915-6952
Email: walter@smithdietrich.com

Lynn A. Toops*
Natalie A. Lyons*

CLASS ACTION COMPLAINT   14   Smith & Dietrich Law Offices PLLC
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
ibensberg@cohenmalad.com

J. Gerard Stranch, IV*
Michael C. Tackeff
**STRANCH, JENNINGS &
GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com

Samuel J. Strauss, WSBA #46971
Raina C. Borrelli*
**STRAUSS BORRELLI, LLP**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

*Attorneys for Plaintiff*
* Applications for admission *pro hac vice* forthcoming

ELECTRONICALLY FILED
9/2/2025 12:13 PM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-07959-31

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
SNOHOMISH COUNTY

| | |
|---|---|
| COLBY HUTTON, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PAPA JOHN'S USA, INC.,<br><br>Defendant. | Case No.: 25-2-07959-31<br><br>**CLASS ACTION COMPLAINT**<br><br>**EXHIBIT A** |

| Date | Subject Line |
|---|---|
| 1/28/25 | Two Pizzas, One Price — Today Only! |
| 2/4/25 | BOGO Tuesday – Buy One, Get One FREE! 🔥 |
| 4/3/25 | Time's running out to get a FREE large 1-topping pizza ⏳ |
| 4/4/25 | Don't miss out on a FREE large 1-topping pizza 😅 |
| 4/5/25 | Last call for a FREE large 1-topping pizza 🗣️ |
| 4/6/25 | Last chance to get a FREE large 1-topping pizza 🚨 |
| 4/7/25 | 🚨 Offer extended: Get a FREE large 1-topping pizza 🎉 |

CLASS ACTION COMPLAINT
EXHIBIT A - 1

Smith & Dietrich Law Offices PLLC
1226 State Ave. N.E., Suite 205
Olympia, WA 98506
Tel. (360) 915-6952

ELECTRONICALLY FILED
9/2/2025 12:13 PM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-07959-31

25-2-07959-31

**CIVIL: Torts**

SNOHOMISH COUNTY SUPERIOR COURT
Case Information Cover Sheet (CICS)

**Case Number**_____  **Case Title** <u>Hutton v. Papa John's USA, Inc.</u>
**Attorney Name** <u>Walter Smith</u>_____ **Bar Membership Number** <u>46695</u>____

Please check one category that best describes this case for indexing purposes. Accurate case indexing not only saves time in docketing new cases, but helps in forecasting needed judicial resources. Cause of action definitions are listed on the back of this form. Thank you for your cooperation.

**TORT, MEDICAL MALPRACTICE**
- ☐ MED   Hospital
- ☐ MED   Medical Doctor
- ☐ MED   Other Health Care Professional

**TORT, MOTOR VEHICLE**
- ☐ TMV   Death
- ☐ TMV   Non-Death Injuries
- ☐ TMV   Property Damage Only

**TORT, NON-MOTOR VEHICLE**
- ■ CPA   Consumer Protection Act
- ☐ MAL   Other Malpractice
- ☐ PIN   Asbestos
- ☐ PIN   Personal Injury
- ☐ PRP   Property Damages
- ☐ TTO   Products Liability
- ☐ VVT   Victims of Motor Vehicle Theft-Civil
- ☐ WDE   Wrongful Death

___

*Please Note: Public information in court files and pleadings may be posted on a public Web site.*

*Last updated: 05/21/2025*