The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COLBY HUTTON, on his own behalf and on behalf of others similarly situated,

Plaintiff,

and

STATE OF WASHINGTON,

Plaintiff-Intervenor,

v.

PAPA JOHN'S USA, INC., PAPA JOHN'S INTERNATIONAL, INC.,

Defendants.

NO. 2:25-cv-01922-KKE

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANTS PAPA JOHN'S USA, INC. AND PAPA JOHN'S INTERNATIONAL, INC.'S MOTION TO DISMISS

Note for Motion Calendar:
April 10, 2026

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

III.   ARGUMENT ...................................................................................................... 3

       A.   CEMA Does Not Violate the Dormant Commerce Clause ........................ 3

            1.   Facial challenges are disfavored and not to be decided based on
                 hypotheticals at the pleading stage .................................................... 4

            2.   Papa John's extraterritoriality arguments are unsupported by modern law ....... 5

            3.   Papa John's cannot establish a significant burden on interstate commerce
                 or that any such burden outweighs CEMA's benefits to consumers ................. 8

       B.   CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject
            Lines ....................................................................................................... 11

            1.   CAN-SPAM exempts consumer protection statutes like CEMA .................... 11

            2.   The terms "deception" and "misleading" are harmonious ............................ 15

            3.   A plaintiff need not plead common law tort elements to avoid preemption .... 17

            4.   CEMA complements CAN-SPAM. ......................................................... 22

IV.    CONCLUSION ................................................................................................ 22

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - i
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# TABLE OF AUTHORITIES

## Cases

*Adams v. King Cnty.*,
164 Wash. 2d 640, 192 P.3d 891 (2008) ............................................................... 18

*Agnew v. Macys Retail Holdings LLC*,
No. 2:25-CV-02006-JHC, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026) ...................... 1, 3

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*,
107 F.4th 934 (9th Cir. 2024) ............................................................................ 13

*Asis Internet Servs. v. Member Source Media, LLC*,
No. C 08 1321 EMC, 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) ................................ 21

*Asis Internet Servs. v. Subscriberbase Inc.*,
No. 09-3503SC, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ...................................... 22

*Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*,
486 U.S. 888 (1988) ......................................................................................... 8

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
777 F.3d 712 (4th Cir. 2015) .............................................................................. 21

*Booth v. Appstack, Inc.*,
No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ............................... 8

*Brown v. Old Navy, LLC*,
567 P.3d 38 (2025) ............................................................................. 5, 15, 18, 19

*Brummet v. Washington's Lottery*,
288 P.3d 48 (Wash. Ct. App. 2012) ...................................................................... 20

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
No. C10-861RSM, 2011 WL 3471476 (W.D. Wash. Aug. 8, 2011) ................................ 17

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ....................................................................................... 7, 8

*Elcon Const., Inc. v. E. Washington Univ.*,
174 Wn.2d 157, 273 P.3d 965 (2012) ................................................................... 18

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938) .......................................................................................... 19

*F.T.C. v. Stefanchik*,
559 F.3d 924 (9th Cir. 2009) .............................................................................. 17

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - ii
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Ferguson v. Friendfinders, Inc.*,
  115 Cal. Rptr. 2d 258 (2002) ........................................................................................ 7

*Flynt v. Bonta*,
  131 F.4th 918 (9th Cir. 2025) .................................................................................. 5, 10

*Gordon v. Virtumundo, Inc.*,
  575 F.3d 1040 (9th Cir. 2009) ..................................................................... 11, 14, 18, 22

*Harbers v. Eddie Bauer, LLC*,
  415 F. Supp. 3d 999 (W.D. Wash. 2019) ....................................................................... 21

*Harrington v. Vineyard Vines, LLC*,
  No. C25-1115 TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) ....................... 1, 15, 18

*Hartman v. United Bank Card, Inc.*,
  291 F.R.D 591 (W.D. Wash. 2013) ................................................................................ 8

*Healy v. Beer Institute, Inc.*,
  491 U.S. 324 (1989)............................................................................................... 5, 6

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
  76 F.4th 1164 (9th Cir. 2023) ..................................................................................... 18

*Hickey v. Voxernet LLC*,
  887 F. Supp. 2d 1125 (W.D. Wash. 2012) ..................................................................... 11

*Hill v. Colorado*,
  530 U.S. 703 (2000)................................................................................................... 4

*Hoang v. Reunion.com, Inc.*,
  No. C-08-3518 MMC, 2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ............................... 21

*Hypertouch, Inc. v. ValueClick, Inc.*,
  192 Cal. App. 4th 805, 123 Cal. Rptr. 3d 8 (2011) ..................................................... 13, 21

*Jerde v. Bylt*,
  No. 2:25-CV-01496-JHC, 2026 WL 415445 (W.D. Wash. Feb. 13, 2026)........................... 1

*Keithly v. Intelius Inc.*,
  764 F. Supp. 2d 1257 (W.D. Wash. 2011) ..................................................................... 19

*Kempf v. Fullbeauty Brands.*,
  No. C25-1141 TSZ, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026).................. 1, 4, 9, 10, 15

*Leonard v. McMenamins Inc.*,
  2024 WL 4188974 (W.D. Wash. Sept. 13, 2024)............................................................ 19

*Ma v. Nike, Inc.*,
  No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026).......................... 1, 15, 19

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - iii
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Martin v. CCH, Inc.*,
    784 F. Supp. 2d 1000 (N.D. Ill. 2011) ................................................................. 20

*Martin v. Miller*,
    600 P.2d 698 (Wash. Ct. App. 1979) ................................................................. 18

*Martins v. Vermont Mut. Ins. Co.*,
    92 F.4th 325 (1st Cir. 2024) .............................................................................. 19

*MaryCLE, LLC v. First Choice Internet, Inc.*,
    890 A.2d 818 (Md. Ct. Spec. App. 2006) ....................................................... 7, 10

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ........................................................................................... 11

*Meilleur v. AT & T Inc.*,
    No. C11-1025 MJP, 2011 WL 5592647 (W.D. Wash. Nov. 16, 2011) ............... 11

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023) .................................................................................... 5, 6, 7

*Nat'l Pork Producers Council v. Ross*,
    6 F.4th 1021 (9th Cir. 2021) .......................................................................... 5, 9

*Nat'l Shooting Sports Found. v. Bonta*,
    718 F. Supp. 3d 1244 (S.D. Cal. 2024) ............................................................... 4

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
    469 F.3d 348 (4th Cir. 2006) ....................................................................... 18, 21

*Panag v. Farmers Ins. Co. of Wash.*,
    204 P.3d 885 (Wash. 2009) ............................................................................... 19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................................ 7

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ............................................................................................ 3

*Rosenblatt v. City of Santa Monica*,
    940 F.3d 439 (9th Cir. 2019) .............................................................................. 9

*S.D. Myers, Inc. v. City & Cnty. of San Francisco*,
    253 F.3d 461 (9th Cir. 2001) .............................................................................. 4

*Sam Francis Foundation v. Christies, Inc.*,
    784 F.3d 1320 (9th Cir. 2015) ............................................................................ 4

*Scott v. Cingular Wireless*,
    161 P.3d 1000 (Wash. 2007) ............................................................................... 3

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - iv
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Shahpur v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
   No. 2:25-CV-00284-RLP, 2026 WL 571122 (E.D. Wash. Feb. 27, 2026) .................. 1, 4, 15

*State v. Heckel*,
   24 P.3d 404 (Wash. 2001) ....................................................................................... 3, 4, 9

*State v. Mandatory Poster*,
   398 P.3d 1271 (Wash. App. 2017) .................................................................................. 17

*State v. TVI, Inc.*,
   524 P.3d 622 (Wash. 2023) .............................................................................................. 16

*Stengel v. Medtronic*,
   704 F.3d 1224 (9th Cir. 2013) ......................................................................................... 11

*Strassheim v. Daily*,
   221 U.S. 280 (1911).......................................................................................................... 7

*Sw. Sunsites, Inc. v. F.T.C.*,
   785 F.2d 1431 (9th Cir. 1986) ......................................................................................... 16

*ThermoLife Int'l LLC v. NeoGenis Labs Inc.*,
   No. CV-18-02980-PHX-DWL, 2020 WL 6395442 (D. Ariz. Nov. 2, 2020)...................... 11

*Thompson v. United States*,
   604 U.S. 408 (2025)......................................................................................................... 16

*United Res. Sys., Inc. v. Wilson*,
   614 F. Supp. 3d 243 (D.S.C. 2022) ................................................................................... 6

*United States v. LeCoe*,
   936 F.2d 398 (9th Cir. 1991) ........................................................................................... 13

*Wagner v. Spire Vision*,
   No. C 13-04952 WHA, 2014 WL 889483 (N.D. Cal. Mar. 3, 2014) .................................. 19

*Ward v. United Airlines, Inc.*,
   986 F.3d 1234 (9th Cir. 2021) ........................................................................................... 9

*Washington Bankers Ass'n v. State*,
   495 P.3d 808 (Wash. 2021) ............................................................................................... 9

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008)....................................................................................................... 4, 5

**Statutes**

15 U.S.C.A. § 45................................................................................................................ 17

15 U.S.C.A. § 7701(b)(1) ................................................................................................... 12

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - v
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

15 U.S.C.A. § 7704 .................................................................................................................... 2

15 U.S.C.A. § 7704(a)(2) .............................................................................................. 10, 17, 22

15 U.S.C.A. § 7706 .................................................................................................................... 2

15 U.S.C.A. § 7707(b)(1) .......................................................................................................... 13

28 U.S.C.A. § 2403(b) ................................................................................................................ 3

1998 Wash. Sess. Laws 517 ....................................................................................................... 8

Cal. Civ. Code § 1798.140 (West) ............................................................................................ 10

Wash. Rev. Code § 19.190.005 .................................................................................................. 8

Wash. Rev. Code § 19.190.020(1) .............................................................................................. 2

Wash. Rev. Code § 19.190.020(1)(a) ....................................................................................... 14

Wash. Rev. Code § 19.190.020(1)(b) ....................................................................... 2, 5, 13, 22

Wash. Rev. Code § 19.190.040(1) .............................................................................................. 2

Wash. Rev. Code § 19.190.100 .................................................................................................. 2

Wash. Rev. Code § 19.86.920 .................................................................................................. 19

**Other Authorities**

Fed. Trade Comm'n,
    CAN-SPAM Act: A Compliance Guide for Business (January 2024),
    https://www.ftc.gov/business-guidance/resources/can-spam-act-compliance-guide-
    business ............................................................................................................................ 2, 20

H. Comm. on Energy & Utilities,
    55th Leg., Reg. Sess., House Bill Report on H.B. 2752 (Wash. 1998) .................................. 2

S. Comm. on Energy, Technology & Telecommunications,
    56th Leg., Reg. Sess., Senate Bill Report on H.B. 1037 (Wash. 1999) ................................. 3

S. Rep. No. 108-102 (2003) ....................................................................................... 12, 13, 16

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ............................................................................................................ 11

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - vi
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## I.   INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) is constitutional. The statute protects Washington residents from deceptive commercial email messages and makes sending them a violation of the Washington Consumer Protection Act (CPA). CEMA does not discriminate against out-of-state interests or otherwise violate the dormant Commerce Clause. Like many state laws, CEMA's protection may, at times, have a practical effect on people or companies outside Washington, but that occasional extraterritorial impact does not offend the United States Constitution. Defendants Papa John's USA, Inc. and Papa John's International, Inc.'s (Papa John's) arguments misunderstand federal constitutional law and the operation of the interconnected modern economy.

Further, the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM) does not preempt CEMA. In arguing otherwise, Papa John's try to impose on Plaintiff additional tort elements to plead—like knowledge, reliance, and materiality—that are not part of CEMA nor required by CAN-SPAM to avoid preemption. CAN-SPAM's preemption savings clause specifically carves out and preserves state statutes like CEMA that prohibit misleading or deceptive emails.

This Court should deny Papa John's motion, just as it and the Eastern District have denied similar efforts in six recent orders. *See Agnew v. Macys Retail Holdings LLC*, No. 2:25-CV-02006-JHC, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026); *Shahpur v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 2:25-CV-00284-RLP, 2026 WL 571122 (E.D. Wash. Feb. 27, 2026); *Jerde v. Bylt*, No. 2:25-CV-01496-JHC, 2026 WL 415445 (W.D. Wash. Feb. 13, 2026); *Kempf v. Fullbeauty Brands*, No. C25-1141 TSZ, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026); *Harrington v. Vineyard Vines, LLC*, No. C25-1115 TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025), *reconsideration denied sub nom.*, No. C25-1115 TSZ, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Ma v. Nike, Inc.*, No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026). No Washington court—state

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 1
(2:25-cv-01922-KKE)

or federal—has found the challenged portion of CEMA unconstitutional or preempted by CAN-SPAM.

## II.    BACKGROUND

Adopted in 1998, CEMA's application to email is narrow. At issue here, CEMA prohibits a person from sending email marketing messages containing "false or misleading information," specifically "in the subject line," to email addresses the sender knows or has reason to know belong to Washington State residents. Wash. Rev. Code § 19.190.020(1)(b). Unlike CAN-SPAM, CEMA does not address content in the email body, require disclosure of an email's commercial nature and sender location or opt-out procedures, or impose penalties of $53,088[1] per email (plus consumer restitution). *Compare* Wash. Rev. Code § 19.190.020(1), .040(1) *with* 15 U.S.C.A. § 7704. A CEMA violation penalty is presently the greater of $500 or actual damages. Wash. Rev. Code § 19.190.040(1).[2] Importantly, unlike CAN-SPAM which only federal agencies, state attorneys general, and certain internet providers can enforce, CEMA provides Washington State consumers with a private right of action. *Compare* Wash. Rev. Code § 19.190.100, .040(1) *with* 15 U.S.C.A. § 7706.

CEMA was designed to address the local impact of spam email on Washington consumers and businesses. The Attorney General's Office reported to the Legislature that during the five-month period before CEMA's passage, of 322 complaints received about unsolicited email, many were commercial advertisements and "spam [was] the highest category of consumer complaints" the office received overall. H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on H.B. 2752 (Wash. 1998). Legislative testimony emphasized that CEMA "allows expansion of Internet usage while curtailing abuses before they reach crisis." S. Comm.

---

[1] Fed. Trade Comm'n, CAN-SPAM Act: A Compliance Guide for Business (January 2024), https://www.ftc.gov/business-guidance/resources/can-spam-act-compliance-guide-business.

[2] Pursuant to H.B. 2274 (2026), the Washington Legislature just lowered CEMA's per violation penalty from $500 to $100, effective June 11, 2026.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 2
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess., Senate Bill Report on H.B. 1037 (Wash. 1999).

### III.    ARGUMENT

The State intervenes for the limited purpose of defending CEMA's constitutionality pursuant to 28 U.S.C.A. § 2403(b). It takes no position with respect to other issues raised in the litigation, including whether the email subject lines at issue are false or misleading as a matter of law. Overall, the State agrees with the arguments regarding CEMA's constitutionality in Plaintiff's response brief. Dkt. 24 at 16-24. The State writes separately, however, to offer the perspective of the State's chief law enforcement officer as to CEMA's constitutionality, its proper interpretation, and the importance of private enforcement of consumer protection statutes like CEMA. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007) (observing "[p]rivate actions by private citizens are now an integral part of CPA enforcement" and that consumers "bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests").

### A.    CEMA Does Not Violate the Dormant Commerce Clause

Papa John's argues that CEMA violates the dormant Commerce Clause because: (1) CEMA directly controls commerce occurring outside of Washington's boundaries; and (2) CEMA excessively burdens interstate commerce, under the balancing test established by *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Dkt. 22 at 9, 17-24. These arguments generally fail for the reasons in Plaintiff's opposition brief, Dkt. 24 at 16-21, particularly because the Washington Supreme Court already rejected a dormant Commence Clause challenge to CEMA decades ago. *State v. Heckel*, 24 P.3d 404, 409-13 (Wash. 2001), *cert. denied*, 534 U.S. 997 (2001). Both this Court and the Eastern District recently rejected dormant Commerce Clause challenges to CEMA as well. *Agnew*, 2026 WL 764140, at *1;

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 3 (2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Kempf*, 2026 WL 395677, at *5-7; *Shahpur*, 2026 WL 571122, at *4-5. The State endeavors not to repeat Plaintiff's arguments and instead will emphasize a few points.

**1.** **Facial challenges are disfavored and not to be decided based on hypotheticals at the pleading stage.**

The law is clear that a facial challenge to a statute is highly disfavored and can only succeed if Papa John's meets the incredibly high bar to prove that "no set of circumstances exists under which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001). Papa John's, relying primarily upon *Heckel*, 24 P.3d at 409, *Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1257 (S.D. Cal. 2024), *reconsideration denied*, No. 23-CV-0945-AGS-KSC, 2025 WL 1012326 (S.D. Cal. 2025), and *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015), essentially seeks to lessen that burden by asking the Court to rely on certain hypotheticals. Dkt. 22 at 19-20.[3] But "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (internal quotation omitted). Here, the text of CEMA makes clear that the statute "is surely valid in the vast majority of its intended applications," i.e., it applies to spammers using equipment located in Washington and to the receipt of spam by a Washington resident located in Washington. Papa John's self-serving hypotheticals at the pleading stage are not sufficient to support a facial challenge, particularly considering the Supreme Court's warning to "not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *See, e.g.*, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449-51 (2008).

Indeed, Papa John's hypotheticals about a Washington resident visiting New York or a California resident who attended college in Washington twenty years ago underscore why facial

---

[3] Ironically, Papa John's does so even while acknowledging the *Heckel* court rejected a dormant Commerce Clause challenge also relying on a hypothetical. Dkt. 22 at 21.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 4
(2:25-cv-01922-KKE)

challenges are so disfavored. *See id.* at 449, 450-51 (stating facial challenges are disfavored because they "often rest on speculation," "run contrary to the fundamental principle of judicial restraint" and "threaten to short circuit the democratic process"). In short, Papa John's speculative attorney arguments ignore "the Supreme Court's clear instruction . . . that extreme caution is warranted before a court deploys its implied authority to reject a state law under the dormant Commerce Clause." *Flynt v. Bonta*, 131 F.4th 918, 926 (9th Cir. 2025), *cert. denied,* No. 25-173, 2026 WL 79841 (U.S. Jan. 12, 2026) (cleaned up). Regardless, Papa John's concern that a Washington resident <u>may</u> receive an email while temporarily in another location, Dkt. 22 at 17-20, ignores the Washington connection CEMA requires—the requirement the email is sent to a Washington resident. *See, e.g.*, *Brown v. Old Navy, LLC*, 567 P.3d 38, 45 (2025) (CEMA "targets a specific deceptive commercial practice: sending Washington residents commercial e-mails that contain 'false or misleading information in the subject line[s].'") (quoting Wash. Rev. Code § 19.190.020(1)(b)). Papa John's hypothetical scenarios do not offend the Constitution as described below and cannot change the fact that Wash. Rev. Code § 19.190.020(1)(b) is focused upon activity targeting Washington consumers. Simply put, a company that directs its commercial email to Washington residents does not get a free pass from compliance with Washington law when the resident is temporarily out of state.

**2.    Papa John's extraterritoriality arguments are unsupported by modern law.**

Papa John's overemphasizes the importance of the alleged extraterritorial impact of CEMA under the dormant Commerce Clause in the interconnected modern economy. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374-75 (2023) ("In our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior."). The Ninth Circuit aptly noted that while the dormant Commerce Clause is "not yet a dead letter," certainly "it is moving in that direction." *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1033 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023). Before that, in *Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989), the Supreme Court had stated that in some

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 5 (2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

situations "a statute that directly controls commerce occurring wholly outside the boundaries of a state exceeds the inherent limits of the enacting State's authority." 491 U.S. at 336. In the following years, some courts read *Healy* to mean that the dormant Commerce Clause prohibited statutes with any extraterritorial effects. *See, e.g., United Res. Sys., Inc. v. Wilson*, 614 F. Supp. 3d 243, 256 (D.S.C. 2022).

Papa John's relies on *Healy* and its progeny, ignoring that in 2023, the United States Supreme Court clarified that extraterritorial effects alone do <u>not</u> violate the dormant Commerce Clause. *Nat'l Pork Producers*, 598 U.S. at 370-71. The *National Pork Producers* Court explained that the challenged statutes in *Healy* and other extraterritoriality cases "had a specific impermissible 'extraterritorial effect'—they deliberately 'prevent[ed out-of-state firms] from undertaking competitive pricing' or 'deprive[d] businesses and consumers in other States of 'whatever competitive advantages they may possess.'" *Id.* at 371 (quoting *Healy*, 491 U.S. at 338-39). Although several Justices wrote separately, "the Court unanimously disavow[ed] petitioners' 'almost per se' rule against laws with extraterritorial effects." *Id.* at 389 n.4; *see also id.* at 394 (Roberts, C.J., concurring in part); *id.* at 403, n.1 (Kavanaugh, J., concurring in part). Thus, the Supreme Court warned that "[p]reventing state officials from enforcing a democratically adopted state law in the name of the dormant Commerce Clause is a matter of 'extreme delicacy,' something courts should do only 'where the infraction is clear.'" *Id.* at 390 (quotation omitted). There is no substantial, non-speculative extraterritorial impact here, and certainly not one rising to a level of constitutional magnitude.

In rejecting an almost per se rule against extraterritoriality, the Court clarified that it did not "trivialize the role territory and sovereign boundaries play in our federal system." *Nat'l Pork Producers*, 598 U.S. at 375-76. Instead, it explained that other express provisions of the Constitution, including the Due Process Clause and the Full Faith and Credit Clause, may be relevant to the analysis. *Id.* (citation omitted). Those provisions are not at issue here. But even if they were, they support CEMA's extraterritorial application to Washington residents temporarily

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 6
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

outside the state's borders, because Washington undoubtedly has a state interest in protecting its consumers, including those who are temporarily outside the state. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (under the Due Process Clause, a state may apply its law as long as it has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair"); *Nat'l Pork Producers*, 598 U.S. at 376 (observing that a State's extraterritorial reach ends at "acts committed 'outside [the first State's] jurisdiction' that are not 'intended to produce [or that do not] produc[e] detrimental effects within it") (quoting *Strassheim v. Daily*, 221 U.S. 280, 285 (1911)). Cases striking down laws under these provisions are limited to instances where the challenged regulation governs extraterritorial conduct involving individuals "with no connection to the State." *Nat'l Pork Producers*, 598 U.S. at 376 n.1 (distinguishing *Edgar v. MITE Corp.*, 457 U.S. 624 (1982)). Accordingly, they are vastly different from the CEMA, which protects Washington consumers and requires either a computer located in Washington or an email sent to a Washington resident.

Even if the statute applies in some instances to email received while a Washington resident is outside the state, it is constitutional. Courts have upheld similar statutes facing dormant Commerce Clause challenges. *See MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818 (Md. Ct. Spec. App. 2006); *Ferguson v. Friendfinders*, *Inc.*, 115 Cal. Rptr. 2d 258 (2002), *as modified* (Jan. 14, 2002). Papa John's mischaracterizes *MaryCLE* as upholding a law similar to CEMA "only after" concluding it applied "to emails that were sent from or received in the state." Dkt. 22 at 20. On the contrary, the *MaryCLE* court expressly held there was no dormant Commerce Clause violation because "[i]n order to violate the Act, an email advertiser must <u>either</u> use equipment located in the State of Maryland <u>or send prohibited [email] to someone he knows or should know is a Maryland resident</u>." *MaryCLE*, 890 A.2d at 844 (emphasis added). The *MaryCLE* court also noted that the defendant's "business decision" to send email "all over the country, invoking the probability that it will be received by Maryland residents" was

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 7
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

"markedly different" than the "practical effects" involved in the Supreme Court's extraterritoriality cases. *Id*. at 842-43. Further, assessing a similar argument as that Papa John's presents here, that email is received "in cyberspace" and thus potentially outside a regulated state, *Ferguson* concluded that the law at issue was still anchored locally in part because "e-mail recipients are people or businesses that function in the real world and have a geographic residence." 115 Cal. Rptr. 2d at 264.

Papa John's reliance upon cases from the Western District interpreting the Washington Automatic Dialing and Announcing Device statute (WADAD) is likewise misplaced. Dkt. 22 at 19 (citing *Hartman v. United Bank Card, Inc.*, 291 F.R.D 591 (W.D. Wash. 2013); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015)). *MaryCLE*, *Ferguson*, *Hartman*, and *Booth* were all decided well before the Supreme Court's opinion in *National Pork Producers* clarified *Healy* and rejected the per se rule against extraterritoriality. Papa John's primary dormant Commerce Clause regarding extraterritoriality argument does not reflect the current governing law.

### 3. Papa John's cannot establish a significant burden on interstate commerce or that any such burden outweighs CEMA's benefits to consumers.

Finally, both parties discuss balancing under *Pike*, but it is worth noting that the last time the Supreme Court explicitly invalidated a state statute under *Pike* was in 1982. *Edgar*, 457 U.S. at 640-646.[4] Additionally, although both parties speak broadly about CEMA's local benefits, CEMA has a connection to Washington, a strong one—it is limited to emails targeting Washington residents, even if they might temporarily travel outside the state. The Washington Legislature and the Washington Supreme Court have identified the legitimate local benefits of CEMA, *see* 1998 Wash. Sess. Laws 517 (former Wash. Rev. Code § 19.190.005) (describing

---

[4] The Court invalidated a state statute under a *Pike*-like balancing analysis in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988), but only Justice Scalia's concurring opinion cited *Pike* and applied its test.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 8
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

complaints about the growing volume of commercial email); *Heckel*, 24 P.3d at 409-10 (detailing local benefits from CEMA), and the Court must "presume the law serves the [state's] legitimate interests." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019). Papa John's, as the party bearing the burden here, *id.*, cannot overcome the presumption in favor of CEMA's local benefits.

Further, the primary burden that Papa John's articulates—the "onerous burden" of determining consumers' residency—is not a basis for invalidating state law. Dkt. 22 at 23-24. Initially, that argument is an improper invitation at the Rule 12 stage to speculate about whether and how Papa Johns can assess residency. That argument further fails because as this Court has held, the "'burden'" or "work of determining the residency associated with each e-mail address" does not "affect interstate commerce; it does not discriminate between in-state and out-of-state firms or fall more heavily on the latter" and thus is not a proper basis for a Dormant Commerce Clause challenge. *Kempf*, 2026 WL 395677, at *7; *see also Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1241-42 (9th Cir. 2021) ("[t]he mere fact that a firm engaged in interstate commerce will face increased costs as a result of complying with state regulation does not, on its own, suffice to establish a substantial burden on interstate commerce."); *Nat'l Pork Producers*, 6 F.4th at 1032 ("For dormant Commerce Clause purposes, laws that increase compliance costs, without more, do not constitute a significant burden on interstate commerce."); *Washington Bankers Ass'n v. State*, 495 P.3d 808, 826 (Wash. 2021) ("[E]conomic hardship alone is insufficient to invalidate a law because the commerce clause protects markets," not individual entities).

Moreover, Papa John's argument that CEMA imposes "disparate" "stringent standards regulating commercial emails nationwide," Dkt. 22 at 23, relies on an incorrect premise that CEMA regulates all email traffic with no connection whatsoever to Washington. As discussed above, that argument is neither factually nor legally sound. Additionally, whether under CEMA, CAN-SPAM, or similar laws in other states like Maryland, it is not a 'burden' to merely refrain

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 9 (2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

from sending thousands of emails with false or misleading subject lines as these laws require. *See Kempf*, 2026 WL 395677, at *7 (stating if a company "took care not to include any false or misleading information in the subject lines of its electronic messages, then it would not need to shoulder any 'burden' of determining" consumer residency pursuant to CEMA); 15 U.S.C.A. § 7704(a)(2) (prohibiting subject lines "likely to mislead a recipient"); *MaryCLE*, 890 A.2d at 843 (Maryland antispam law "only mandates that all email addressed to Maryland residents be truthful and non-deceptive").

Finally, Papa John's argues that the Washington Legislature could "draft a narrowed statute" limited to emails sent from a computer in Washington or to a computer the sender knows or has reason to know is in Washington. Dkt. 22 at 24. Yet if Papa John's claims to be unable to determine where an email recipient is located when it sends emails—and this is part of the burden it perceives in complying with CEMA—then not even its proposed, narrowed statute would resolve those purported burdens. Papa John's would still need to determine where the computer receiving the email is located. Zooming out, Papa John's theory of the dormant Commerce Clause would eviscerate <u>any</u> state law that protects consumers from unfair or deceptive marketing on the internet. State data privacy statutes—many of which are based on residency—would also presumably be subject to invalidation. *See, e.g.*, Cal. Civ. Code § 1798.140 (West) (defining "consumer" for purposes of the California Consumer Privacy Act as "a natural person who is a California resident, as defined in Section 17014 of Title 18 of the California Code of Regulations" which further defines a "resident" as "(1) every individual who is in the State for other than a temporary or transitory purpose, and (2) every individual who is domiciled in the State who is outside the State for a temporary or transitory purpose"). Where courts have insisted on "extreme caution," *Flynt*, 131 F.4th at 926, Papa John's sprawling view of the dormant Commerce Clause is a non-starter.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 10
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**B.      CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject Lines**

Preemption is a constitutional issue separately warranting the State's intervention under Rule 5.1. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (citing U.S. Const. art. VI, cl. 2) (observing preemption doctrine "derives from the Supremacy Clause of the United States Constitution"); *ThermoLife Int'l LLC v. NeoGenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2020 WL 6395442, at *16 (D. Ariz. Nov. 2, 2020) (because preemption claims are constitutional in nature, state must be allowed to address such claims).

Any preemption analysis begins with the "presumption against supplanting the historic police powers of the States by federal legislation unless that is the clear and manifest purpose of Congress." *Virtumundo*, 575 F.3d at 1060 (cleaned up). "This presumption against preemption leads us to the principle that express preemption statutory provisions should be given narrow interpretation." *Id*. (cleaned up). Papa John's, as the party "seeking to invalidate a state law based on preemption bear[s] the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic*, 704 F.3d 1224, 1227-28 (9th Cir. 2013) (en banc) (cleaned up). "Consumer protection is an area of traditional state authority creating a presumption against federal preemption." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012) (citing *Meilleur v. AT & T Inc.*, No. C11-1025 MJP, 2011 WL 5592647, at *3 (W.D. Wash. Nov. 16, 2011)). Thus, the presumption against preemption applies to both the *existence* and *scope* of the alleged preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

**1.      CAN-SPAM exempts consumer protection statutes like CEMA.**

The Legislature never intended for CAN-SPAM to replace traditional state regulations of unfair and deceptive acts and practices (like CEMA). Although Papa John's wishes the Court to focus on one aspect of CAN-SPAM's intent—the need for national regulations—the company ignores the primary purpose of CAN-SPAM: to reduce the sheer volume of unwanted commercial email messages. CAN-SPAM does speak to a "substantial government interest in

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 11 (2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

regulation of commercial email on a nationwide basis" (15 U.S.C.A. § 7701(b)(1)) but neither the law itself, nor the Senate report accompanying it lists anything akin to establishing one, exclusive "national uniform standard" among its purposes:

> The purposes of this legislation are to: (i) prohibit senders of electronic mail (e-mail) for primarily commercial advertisement or promotional purposes from deceiving intended recipients or Internet service providers as to the source or subject matter of their e-mail messages; (ii) require such e-mail senders to give recipients an opportunity to decline to receive future commercial e-mail from them and to honor such requests; (iii) require senders of unsolicited commercial e-mail (UCE) to also include a valid physical address in the e-mail message and a clear notice that the message is an advertisement or solicitation; and (iv) prohibit businesses from knowingly promoting, or permitting the promotion of, their trade or business through e-mail transmitted with false or misleading sender or routing information.

S. Rep. No. 108-102, at 1 (2003). In short, CAN-SPAM (like CEMA before it) was consumer protection legislation, not legislation designed to benefit companies that send mass email.

CAN-SPAM does set some uniform national standards for certain technical issues like opt-out mechanisms, sender identification, and postal address disclosure. Yet none of the national standards in CAN-SPAM relate to traditional consumer protection regulations that addressed unfair and deceptive acts and practices in email:

> The legislation would supersede State and local statutes, regulations, and rules that expressly regulate the use of e-mail to send commercial messages except for statutes, regulations, or rules that target fraud or deception in such e-mail. Thus, a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted. Given the inherently interstate nature of e-mail communications, the Committee believes that this bill's creation of one national standard is a proper exercise of the Congress's power to regulate interstate commerce that is essential to resolving the significant harms from spam faced by American consumers, organizations, and businesses throughout the United States. This is particularly true because, in contrast to telephone numbers, e-mail addresses do not reveal the State where the holder is located. As a result, a sender of e-mail has no easy way to determine with which State law to comply. Statutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 12 (2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

<u>legitimate business trying to comply with relevant laws would not be engaging in anyway.</u>

S. Rep. No. 108-02, at 21-22 (2003) (emphasis added). CAN-SPAM also specifically exempts other non-email consumer protection statutes. *Id.* at 22. In short, CAN-SPAM was never trying to "fix" a problem with consumer protection regulations like CEMA. *See Hypertouch, Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8, 22 (2011) ("The legislative history also makes clear . . . that [CAN-SPAM's] preemption provision was largely intended to target state statutes imposing content requirements on commercial e-mails, while leaving states free to regulate the use of deceptive practices in commercial e-mails in whatever manner they chose.").

It is thus no surprise that while its preemption clause states that CAN-SPAM supersedes a state law that "regulates the use of electronic mail to send commercial messages," it <u>expressly exempts</u> "any such statute" that "prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C.A. § 7707(b)(1). The CEMA provision at issue here does just that, prohibiting email that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). Not only is this consistent with CAN-SPAM's history, this plain language should end the preemption analysis. *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024) (to interpret an express preemption clause, a court is required "to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law").[5]

Instead, relying on *Virtumundo*, Papa John's argues that CEMA is preempted because of CAN-SPAM's legislative intent to avoid "disparate" "standards and requirements" that are "difficult to comply with" and "more burdensome" due to challenges determining email

---

[5] CEMA predates CAN-SPAM by several years, so the conclusion that CEMA fits squarely into the preemption exemption is further supported by the long-standing rule that "Congress is, of course, presumed to know existing law pertinent to any new legislation it enacts." *United States v. LeCoe*, 936 F.2d 398, 403 (9th Cir. 1991).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 13
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

recipients' locations. Dkt. 22 at 24-25 (internal citations omitted). Papa John's, however, fails to engage with what that means in practice. When one does, Papa John's argument collapses.

To start, *Virtumundo* did not directly address deceptive email subject lines. It considered whether CAN-SPAM preempted claims under a different CEMA provision (not at issue here) (1)(a), which prohibits email that "misrepresents or obscures" information about the sender. Wash. Rev. Code § 19.190.020(1)(a). There, plaintiff asserted sender should have been identified as "Virtumundo" rather than the abbreviated domain names used (i.e. "vmmail.com," "vmadmin.com," "vtarget.com," and "vmlocal.com"). *Virtumundo*, 575 F.3d at 1063-64. The Ninth Circuit concluded that such "technical" allegations of "non-deceptive" inaccuracies or omissions are "at best" claims for "incomplete or less than comprehensive information." *Id*. at 1064. Understandably, the court concluded that to the extent that provision (1)(a) addressed non-deceptive acts and practices, this did not rise to the level of "wrongful conduct" or "falsity or deception" necessary to avoid preemption. *Id*. at 1062, 1064. This case, in contrast, is about provision 1(b), which only prohibits "false or misleading information" and cannot be read to impose strict liability for simple mistakes as Papa John's implies. The practical reality is that while it might be difficult in some instances for companies to avoid mistakes and abide by disparate standards requiring specific labels or terms in email (i.e. in one state the sender can be "vmadmin.com" and in another it must be "virtumundo.com")—it is not difficult for companies to refrain from putting false or misleading information in email subject lines (i.e. if a sale will last a week, do not tell consumers that the sale ends "tomorrow" or if a sale is not "sitewide" do not tell consumers it is in email subject lines). *Virtumundo* does not support preemption based on a conflict with CAN-SPAM's general aim of regulating email content nationwide so companies know how to abide by the law.

Papa John's further ignores that in *Virtumundo*, the Ninth Circuit acknowledged that CEMA's statutory framework at least suggests it "extends only to deceptive commercial e-mail" rather than non-deceptive acts or mere clerical errors. 575 F.3d at 1059, n.17. When the

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 14
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Ninth Circuit decided *Virtumundo* in 2009, however, it stated that how broadly to interpret CEMA was unsettled. *Id.* at 1059. The Ninth Circuit thus concluded that "state courts may ultimately mold CEMA's broad language so as to cabin its breadth or interpret the law in conformity with federal legislation." *Id*. Last year, after certification from this Court, the Washington State Supreme Court did just that in *Brown*, 567 P.3d at 47.

In *Brown*, the court confirmed that CEMA's subject line provision does not prohibit mere technical errors or "mere puffery." *Id*. The *Brown* court held CEMA's subject line provision addresses deceptive "representations of fact—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions." *Id. Brown* thus addressed the concern the *Virtumundo* court had in 2009 that Papa John's now relies on: that the preemption exemption might be allowed to 'swallow the rule' undermining the regulatory balance Congress established. Dkt. 22 at 29-30. As this Court recently recognized, *Brown* confirmed CEMA and CAN-SPAM are not in conflict by making clear that rather than targeting mere errors, CEMA's subject line provision prohibits false or deceptive statements about facts that are important to consumer decision making. *See Harrington,* 2025 WL 3677479, at *1 and *Kempf*, 2026 WL 395677, at *5 (both quoting *Brown*). Refraining from using such statements is the law in Washington and nationally—it presents corporations with no compliance difficulties.

**2.  The terms "deception" and "misleading" are harmonious.**

As detailed above, because CEMA's subject-line provision prohibits only "falsity" or "deception" in the subject-line of commercial e-mails, it "falls squarely within this area reserved to the States[.]" *Harrington*, 2025 WL 3677479, at *1; *see also Ma*, 2026 WL 100731, at *2; *Shahpur*, 2026 WL 571122, at *4 ("The use of the words 'falsity or deception' indicates Congress intended the CAN-SPAM exception to apply more broadly than claims of fraud."); *Kempf*, 2026 WL 395677, at *4, n.8 ("States are expressly permitted [under CAN-SPAM's savings clause] to provide private avenues of relief for false or deceptive commercial e-mails.").

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 15
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Again, the Senate report accompanying CAN-SPAM supports this, explaining that although one of CAN-SPAM's purposes was to impose national standards for commercial e-mail content, "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." S. Rep. No. 108-102 at 21-22 (2003).

To avoid this conclusion (and this Court's now numerous recent rulings), Papa John's relies on a tortured semantic argument—that CEMA and CAN-SPAM cannot coexist because the term "misleading" in CEMA is different than the term "deception" in CAN-SPAM; that Congress used the terms "deception" and "misleading" in different parts of CAN-SPAM; and that neither of those two terms rise to the level of falsity. Dkt. 22 at 27-28. In Papa John's own words, CEMA is preempted by CAN-SPAM because "'False/falsity,' 'deception,' and 'misleading' . . . cannot be synonymous." *Id.* at 27. This entirely misses the point. First, all three terms are not intended to be 100% synonymous among themselves because both statutes use disjunctive terms: CEMA prevents the use of "false *or* misleading" subject lines, while CAN-SPAM exempts state statutes that prohibit "falsity *or* deception." Neither statute requires both falsity *and* the next term, so there never has been a requirement that "false" is synonymous with the other two terms.

Second, although "falsity" is generally different than "deception" and "misleading," the latter two terms are harmonious in this context. As Papa John's notes, courts have generally held that falsity is a higher standard than whether something is deceptive or misleading. *E.g.*, *Thompson v. United States*, 604 U.S. 408, 413 (2025); *State v. TVI, Inc.*, 524 P.3d 622, 637 (Wash. 2023). It does not follow, however, that misleading and deceptive are materially different concepts that must be distinct in CEMA and CAN-SPAM. To the contrary, deception and misleading are interrelated concepts, particularly in the consumer protection context. *See, e.g.*, *Sw. Sunsites, Inc. v. F.T.C.*, 785 F.2d 1431, 1435 (9th Cir. 1986) ("deception" exists under the Federal Trade Commission Act (FTC Act) "if there is a representation, omission or practice that

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 16 (2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

is likely to mislead" a reasonable consumer) (emphasis omitted); *State v. Mandatory Poster*, 398 P.3d 1271, 1274 (Wash. App. 2017), *rev. denied*, 404 P.3d 496 (2017) ("An act is deceptive if it is likely to mislead a reasonable consumer."); *see also Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861RSM, 2011 WL 3471476, at *3 (W.D. Wash. Aug. 8, 2011) (observing in the context of the Lanham Act that to demonstrate falsity, "a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers.") (citation omitted) (emphasis added).

Third, the fact that Congress used "deceptive" and "misleading" in different parts of CAN-SPAM supports, rather than undermines, this conclusion. For example, in 15 U.S.C.A. § 7704(a)(2)'s prohibition of "deceptive subject headings," Congress defined "deceptive" as "misleading," i.e., "that a subject heading of the message would be likely to mislead a recipient. . . ." Moreover, the section goes on to incorporate the core provision of the FTC Act (15 U.S.C.A. § 45), i.e., the prohibition on unfair and deceptive acts or practices. It is well accepted that the FTC Act defines deception and misleading congruously. *See, e.g.*, *F.T.C. v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) (under the FTC Act, an act or practice is "deceptive" if, among other things, it "is likely to mislead consumers acting reasonably under the circumstances"). Thus, there is no reason to conclude that the use of term "deception" in CAN-SPAM must, or even should, be read any differently than the term "misleading" in CEMA.

**3.      A plaintiff need not plead common law tort elements to avoid preemption.**

Despite CAN-SPAM's plain language, Papa John's presses a restrictive reading of the preemption clause, asserting it saves only "traditional tort theories" like common-law fraud or CEMA claims plead as CAN-SPAM claims with tort elements. Dkt. 22 at 10, 29-30 (relying primarily on *Virtumundo*). This is incorrect as a matter of law and cannot be squared with Papa John's own authorities, which do not state "only" tort claims are exempt.

*Virtumundo* addressed the scope of CAN-SPAM's preemption clause over sixteen years ago as an issue of first impression in this circuit, relying in part on the then-only federal circuit

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 17
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

court decision addressing the clause: *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006). *Virtumundo*, 575 F.3d at 1059-60. However, neither *Virtumundo* nor *Omega* held that common law torts are the sole state law claims saved from the CAN-SPAM preemption clause. To the contrary, both cases confirm the exception applies broadly to "traditionally tortious or wrongful conduct." *Virtumundo*, 575 F.3d at 1062 (quoting *Omega*, 469 F.3d at 354) (emphasis added). Far from supporting Papa John's arguments, *Virtumundo* explained state law claims about deceptive email subject lines were not preempted. *Id*. at 1062 (observing the legislative intent that "a State law prohibiting *fraudulent or deceptive* headers, subject lines, or content in commercial e-mail would not be preempted").

Tellingly, Papa John's does not meaningfully address this, or the *Brown* opinion cited above which cemented this standard, instead arguing that "for Plaintiff's claim to survive [preemption], he must, at minimum, demonstrate that the allegedly false or misleading subject lines were material to him." Dkt. 22 at 30 (emphasis omitted). This argument for pleading individualized reliance cannot stand after *Brown*, where the Washington State Supreme Court held that CEMA's subject line provision does not target puffery or "banal hyperbole" and instead allows for claims premised upon misrepresentations of fact to Washington consumers. 567 P.3d at 47; *see also Harrington*, 2025 WL 3677479, at *1 (same, quoting *Brown*). Nothing in the *Brown*, *Harrington*, *Kempf*, *Shahpur*, *Ma*, *Agnew*, or *Jerde* opinions requires an individualized assessment or pleading of reliance or damages by each plaintiff.

Papa John's cited legal authority for this argument are inapt. Those cases deal with different claims and speak to their elements, not CEMA's. *See* Dkt. 22 at 30-31 citing *Martin v. Miller*, 600 P.2d 698, 700 (Wash. Ct. App. 1979) (assessing "common law fraud"); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (assessing False Claims Act claim); *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wash.2d 157, 166-68, 273 P.3d 965 (2012) (assessing "fraudulent inducement" claim); *Adams v. King Cnty.*, 164 Wash.2d 640, 662, 192 P.3d 891 (2008) (assessing fraudulently

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 18
(2:25-cv-01922-KKE)

obtained consent); *Leonard v. McMenamins Inc.*, 2024 WL 4188974, at \*10 (W.D. Wash. Sept. 13, 2024) (assessing breach of contract and negligence claims) *see also Harrington*, 2025 WL 3677479, at \*1 (rejecting another defendant's same argument for preemption in part because it was "premised on authorities that do not involve CEMA and therefore do not define the elements of a CEMA (or related CPA) claim").[6] Federal courts can impose pleading standards, but cannot add elements to state law claims nor change the substantive evidentiary burdens of state law claims as Papa John's urges. *See, e.g.*, *Martins v. Vermont Mut. Ins. Co.*, 92 F.4th 325, 328 (1st Cir. 2024) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

This Court should likewise decline Papa John's tacit invitation to substitute Papa John's views for that of the Washington State Supreme Court on Washington State law that it <u>is</u> sufficient if email subject line content would be material to consumers generally. *Brown*, 567 P.3d at 47. When evaluating potential for deception for a CPA claim (like those under CEMA), Washington courts look "not to the most sophisticated [consumers] but rather to the least." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009) (citation omitted); *Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011), *on reconsideration*, No. C09-1485RSL, 2011 WL 2790471 (W.D. Wash. 2011) (though some may not be fooled "not everyone is so wary and/or detail-oriented, nor is the CPA designed to protect only those who need no protection. The capacity of a marketing technique to deceive is determined with reference to the least sophisticated consumers among us.").

---

[6] Papa John's urging that plaintiffs must assert all elements of traditional torts like in the fraud cases it cites likewise ignores that consumer protection statutes such as CEMA do not sound in fraud, and that "[t]he great weight of district court and state court decisions" reject a requirement that consumers plead "all the elements of common law fraud," including damages or reliance, to avoid preemption of their anti-spam law claims. *Wagner v. Spire Vision*, No. C 13-04952 WHA, 2014 WL 889483, at \*2 (N.D. Cal. Mar. 3, 2014); *see also Ma*, 2026 WL 100731, at \*3 (addressing this very issue and concluding plaintiff need not plead reliance or injury to avoid preemption). The CPA must be liberally construed to protect consumers. Wash. Rev. Code § 19.86.920. Applying fraud standards to a per se CPA claim—like a CEMA subject line provision violation—conflicts with Washington's liberal construction mandate.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 19
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Papa John's cherry-picked quotes strung together to support the contrary idea, that misleading email subject lines (including those likely creating false urgency to buy) are immaterial to consumers and instead represent mere "technical violations" creating unfair strict liability should be rejected. Dkt. 22 at 30 citing *Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011) and *Brummet v. Washington's Lottery*, 288 P.3d 48, 54 (Wash. Ct. App. 2012). *Brummet* pre-dates *Brown* (which again, concluded consumers <u>do</u> rely on factual representations in subject lines), and does not address commercial emailing, CEMA, or CAN-SPAM.[7] *Martin*, like *Virtumundo*, addresses preemption of technical claims regarding missing information about the email sender and does not conclude all claims regarding <u>deceptive subject lines</u> are preempted. *See Martin*, 784 F. Supp. 2d at 1006 (suggesting only in dicta that some technical claims regarding "incomplete" or "less than comprehensive" subject lines would likely be preempted). Papa John's itself acknowledges that subject lines giving consumers false impressions can mislead consumers, undercutting its own suggestions that such subject lines are essentially inconsequential technical violations. Dkt. 22 at 28. In short, CEMA's prohibition on false or misleading subject lines, like similar consumer protection statutes, reflects policy decisions about wrongful conduct for which there was no common law tort remedy. A plaintiff need not allege tort elements because the statute already defined the wrongful behavior at issue—and that behavior is to be assessed on the merits (i.e. was it just puffery or was it misleading?) rather than just imposing strict liability for something like an abbreviated sender name.

---

[7] Notably, the FTC itself advises that to avoid being "deceptive" in a manner that would violate CAN-SPAM, subject lines "must accurately reflect the content of the message" (rather than relying on the body of an email to clear up a misleading subject line). Fed. Trade Comm'n, CAN-SPAM Act: A Compliance Guide for Business (January 2024), https://www.ftc.gov/business-guidance/resources/can-spam-act-compliance-guide-business.

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 20 (2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

For similar reasons, the Fourth Circuit concluded that neither California nor Maryland's anti-spam statutes were preempted despite neither one requiring pleading or proof of tort elements. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015) (citing *Omega*, 469 F.3d 348). Looking at Maryland's statute, the court found that the state appellate court's earlier conclusion that violations of the anti-spam statute, "like violations of the Consumer Protection Act," impose liability for wrongful conduct similar to tort, was sufficient to avoid preemption. *Id*. at 717. Turning to California's statute, the Fourth Circuit likewise noted that (like *Brown*), a state appellate court "limit[ed] the application of California's anti-spam law to deceptive emails" and therefore was not preempted. *Id.* (citing *Hypertouch*, 123 Cal. Rptr. 3d at 29). The *Hypertouch* Court had already held California's anti-spam law "dispenses with many of the elements associated with common law fraud." *Hypertouch*, 123 Cal. Rptr. 3d at 18. This and other courts have thus rejected Papa John's proposed rule that the elements of torts like fraud must be pled to avoid preemption. *See also Asis Internet Servs. v. Member Source Media*, *LLC*, No. C-08-1321 EMC, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010) (considering California's subject line provision, *Virtumundo*, and CAN-SPAM's preemption clause, and holding plaintiff "need not plead reliance and damages in order for its claim to be excepted from preemption"); *Hoang v. Reunion.com, Inc*., No. C-08-3518 MMC, 2010 WL 1340535, at *6 (N.D. Cal. Mar. 31, 2010) (reversing dismissal under *Virtumundo*, holding failure to allege detrimental reliance was not proper grounds for dismissal). This Court, too, made a similar finding when concluding a plaintiff had Article III standing when making a CEMA claim: "[t]he harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer*, *LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019). The Court should likewise reject Papa John's effort to impose additional pleading requirements on CEMA plaintiffs.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 21
(2:25-cv-01922-KKE)

### 4.    CEMA complements CAN-SPAM.

Papa John's preemption argument undermines Congress' purpose in enacting CAN-SPAM. A preemption analysis is "guided by the oft-repeated comment that the purpose of Congress is the ultimate touchstone in every preemption case." *Virtumundo*, 575 F.3d at 1060 (cleaned up). Here, CEMA's subject line provision aligns with Congress' purpose with CAN-SPAM—a purpose which would not be served by preempting or further narrowing CEMA. Congress enacted CAN-SPAM to "curb the negative consequences of spam and spamming practices without stifling legitimate commerce." *Id*. at 1045. CAN-SPAM's prohibition on misleading information in email subject lines is one way to accomplish this purpose. 15 U.S.C.A. § 7704(a)(2). CEMA's subject line provision supports this same goal by prohibiting "false or misleading" information in email subject lines. Wash. Rev. Code § 19.190.020(1)(b). Requiring higher, more stringent pleading standards (whether following the letter of tort claim elements or CAN-SPAM elements) for claimants does not serve any congressional purpose. *See Asis Internet Servs. v. Subscriberbase Inc*., No. 09-3503SC, 2010 WL 1267763, at *11-12 (N.D. Cal. Apr. 1, 2010) (CAN-SPAM's focus is on the "<u>behavior of advertisers</u>," and "adding the traditional fraud elements of reliance and damages does not add anything to Congress's efforts to create a uniform system of regulation governing email advertisements") (emphasis added). Papa John's argument undermines, rather than protects, CAN-SPAM's primary federal interest to decrease spam.

### IV.    CONCLUSION

The State respectfully requests that the Court deny Papa John's constitutional challenges to CEMA.

///

///

///

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 22 (2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

DATED this 27th day of March, 2026.

NICHOLAS W. BROWN
Attorney General


*s/ Claire McNamara*
BEN BRYSACZ, WSBA #54683
ROBERT HYDE, WSBA #33593
CLAIRE MCNAMARA, WSBA #50097
Assistant Attorneys General
Attorneys for Plaintiff-Intervenor State of
Washington
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-474-7744
ben.brysacz@atg.wa.gov
robert.hyde@atg.wa.gov
claire.mcnamara@atg.wa.gov

*I certify that this memorandum contains 7,609 words, in compliance with the Local Civil Rules.*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS - 23
(2:25-cv-01922-KKE)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744