The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COLBY HUTTON, on his own behalf and on behalf others similarly situated,

                Plaintiffs,

   and

STATE OF WASHINGTON,

                Plaintiff-Intervenor,

   v.

PAPA JOHN'S USA, INC., and PAPA JOHN'S INTERNATIONAL, INC.,

                Defendants.

No. 2:25-cv-01922-KKE

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

***Oral Argument Requested***

NOTED ON MOTION CALENDAR: April 10, 2026[1]

---

[1] Based on briefing schedule set by the Parties' Stipulated Order. *See* Dkts. 27–28.

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................1

II.   ARGUMENT ..................................................................................................................2

    A.    Plaintiff Fails to Allege a CEMA Violation. .......................................................2

        1.    Plaintiff Cannot Assert Claims for Emails He Did Not Receive. .............2

        2.    The Subject Lines Are Not False or Misleading. ....................................2

            a.    Advertising an Extra Pizza as "Free" is Not False or Misleading. ...............................................................................2

            b.    The Subject Lines Accurately Advertised the Timing of Sales. ...........................................................................................3

        3.    Plaintiff Fails to Allege Papa John's Knew His Email Address Belonged to a Washington Resident. ............................................................4

    B.    CEMA Is Invalid Under the Dormant Commerce Clause. ...................................5

        1.    CEMA Regulates Entirely Extraterritorial Conduct. ..............................6

            a.    *National Pork* Did Not Overturn the Prohibition on State Regulation of Entirely Extraterritorial Conduct. ........................6

            b.    *Sam Francis* Applies Here. .............................................................7

        2.    CEMA Excessively Burdens Interstate Commerce. ................................9

    C.    CAN-SPAM Preempts Plaintiff's Broad Application of CEMA. ......................11

        1.    CAN-SPAM Preempts CEMA's Prohibition on Incomplete Subject Lines. ........................................................................................11

        2.    "Misleading" Is Broader than "Falsity or Deception." ...........................11

        3.    Plaintiff Admits He Must Allege Papa John's' Statements Were Material to Avoid Preemption. .............................................................14

        4.    Plaintiff Cannot Allege Knowledge or Injury. ......................................16

    D.    Plaintiff Admits His CPA Claim Fails If His CEMA Claim Fails. ....................17

    E.    Plaintiff's Claim for Actual and Treble Damages Fails. ....................................17

III.  CONCLUSION.............................................................................................................18

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – i
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Agnew v. Macy's Retail Holdings, LLC*,
 2026 WL 764140 (W.D. Wash. 2026)............................................................................13, 14

*Ashlynn Mktg. v. Pan*,
 2025 WL 1953229 (S.D. Cal 2025) ...................................................................................5

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
 622 F. Supp. 2d 935 (N.D. Cal. 2009) ...........................................................................15

*Asis Internet Servs. v. Member Source Media, LLC*,
 2010 WL 1610066 (N.D. Cal. 2010)...............................................................................15

*Asis Internet Servs. v. Subscriberbase Inc.*,
 2010 WL 1267763 (N.D. Cal. 2010) ..............................................................................15

*Ass'n for Accessible Meds. v. Bonta*,
 766 F. Supp. 3d 1020 (E.D. Cal. 2025), *appeal filed*, No. 25-1694 (9th Cir. Mar. 14, 2025)
 ...............................................................................................................................1, 6, 8, 9

*Ass'n for Accessible Meds. v. Ellison*,
 704 F. Supp. 3d 947 (D. Minn. 2023), *aff'd*, 140 F.4th 957 (8th Cir. 2025) ...........................6

*Bontrager v. Showmark Media LLC*,
 2014 WL 12600201 (C.D. Cal. 2014)................................................................................2

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
 2011 WL 3471476 (W.D. Wash. 2011) ...........................................................................12

*Chen v. Sur La Table, Inc.*,
 655 F. Supp. 3d 1082 (W.D. Wash. 2023)........................................................................13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
 751 F.3d 990 (9th Cir. 2014) ..........................................................................................4

*Edgar v. MITE Corp.*,
 457 U.S. 624 (1982)........................................................................................................8

*Facebook, Inc. v. Power Ventures, Inc.*,
 844 F.3d 1058 (9th Cir. 2016) .......................................................................................11

*Ferguson v. Quinstreet, Inc.*,
 2008 WL 3166307 (W.D. Wash. 2008), *aff'd sub nom.*, *Ferguson v. Active Response
 Grp.*, 348 F. App'x 255 (9th Cir. 2009)...........................................................................13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Flynt v. Bonta*,
  131 F.4th 918 (9th Cir. 2025) ...................................................................................5, 7

*Gordon v. Impulse Mktg. Grp., Inc.*,
  375 F. Supp. 2d 1040 (E.D. Wash. 2005) ................................................................14

*Gordon v. Virtumundo*,
  575 F.3d 1040 (9th Cir. 2009) ......................................................................... *passim*

*Graiser v. Visionworks of Am., Inc.*,
  2016 WL 4379301 (N.D. Ohio 2016) ..........................................................................2

*Harrington v. Vineyard Vines, LLC*,
  2025 WL 3677479 (W.D. Wash. 2025), *recons. denied*, 2026 WL 125134
  (W.D. Wash. Jan. 16, 2026) ..................................................................................13, 14

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
  803 F.3d 389 (9th Cir. 2015) ...................................................................................5, 10

*Iowa Pork Producers Ass'n v. Bonta*,
  2024 WL 3158532 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2866 (2025)...............................7

*Jang v. Life Ins. Co.*,
  2017 WL 11632250 (C.D. Cal. 2017)......................................................................17

*Jerde v. Bylt LLC*,
  2026 WL 415445 (W.D. Wash. 2026)..............................................................13, 14

*Jones v. County of San Bernardino*,
  2022 WL 3138880 (C.D. Cal. 2022)........................................................................17

*Kousisis v. United States*,
  605 U.S. 114 (2025)....................................................................................................15

*Ludolph-Aliaga v. Puritan's Pride, Inc.*,
  2024 WL 5186845 (N.D. Cal. 2024) ...........................................................................3

*Ma v. Nike, Inc.*,
  2026 WL 100731 (W.D. Wash. 2026)......................................................................13

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ........................................................................................2

*Nat'l Shooting Sports Found. v. Bonta*,
  718 F. Supp. 3d 1244 (S.D. Cal. 2024), *recons. denied*, 2025 WL 1012326 (S.D. Cal. 2025)
  .................................................................................................................................6, 8, 9

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
  469 F.3d 348 (4th Cir. 2006) ...............................................................................10, 17

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – iii
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Paris v. Steinberg & Steinberg*,
828 F. Supp. 2d 1212 (W.D. Wash. 2011).................................................................................17

*Publius v. Boyer-Vine*,
237 F. Supp. 3d 997 (E.D. Cal. 2017)........................................................................................9

*Rosenblatt v. City of Santa Monica*,
940 F.3d 439 (9th Cir. 2019) ...................................................................................................10

*S.-Cent. Timber Dev., Inc. v. Wunnicke*,
467 U.S. 82 (1984)....................................................................................................................11

*S.D. Myers, Inc. v. City & Cnty. of S.F.*,
253 F.3d 461 (9th Cir. 2001) .....................................................................................................9

*Sam Francis Found. v. Christies, Inc.*,
784 F.3d 1320 (9th Cir. 2015) ........................................................................................ *passim*

*Sams v. Yahoo! Inc.*,
713 F.3d 1175 (9th Cir. 2013) ..............................................................................................5, 16

*Silvas v. E\*Trade Mortg. Corp.*,
514 F.3d 1001 (9th Cir. 2008) ..................................................................................................13

*Silverstein v. Keynetics Inc.*,
2016 WL 7475616 (N.D. Cal. 2016), *aff'd*, 727 F. App'x 244 (9th Cir. 2018) ................15, 16

*Thompson v. United States*,
604 U.S. 408 (2025).................................................................................................................12

*Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*,
2026 WL 571122 (E.D. Wash. 2026) ...........................................................................7, 13, 14

*Zoobuh, Inc. v. Better Broad., LLC.*,
2013 WL 2407669 (D. Utah 2013) ...........................................................................................12

**State Cases**

*Adams v. King County*,
164 Wn.2d 640 (2008) ..............................................................................................................16

*Brown v. Old Navy, LLC*,
4 Wn.3d 580 (2025) ......................................................................................................... *passim*

*Montes v. Sparc Group LLC*,
No. 104162-4 (Wash. Apr. 2, 2026) .........................................................................................16

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*,
64 Wn. App. 553 (1992) ............................................................................................................17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*State v. Heckel*,
143 Wn.2d 824 (2001) ....................................................................................................8, 10

*Stephens v. Omni Ins. Co.*,
138 Wn. App. 151 (2007), *aff'd sub nom.*, *Panag v. Farmers Ins. Co. of Wash.*,
166 Wn.2d 27 (2009) ........................................................................................................14

**Federal Statutes**

15 U.S.C. § 7701....................................................................................................................10

15 U.S.C. § 7704 ........................................................................................................11, 12, 16

**State Statutes**

HB 2274 (2026) .....................................................................................................................17

RCW 19.190.020 ...........................................................................................................4, 8, 13

RCW 19.190.040 .....................................................................................................................2

**Rules**

Rule 12(b)(6)..............................................................................................................5, 16, 17

**Regulations**

16 C.F.R. § 251.1 ..................................................................................................................2, 3

**Other Authorities**

16A Wash. Prac., Tort Law & Practice § 19:3 (5th ed. 2025).........................................15

1998 Wash. Sess. Laws ch. 149...........................................................................................10

*Mislead*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/mislead (last
accessed Apr. 9, 2026) .................................................................................................14

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – v
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

Plaintiff's and Plaintiff-Intervener State of Washington's (the "State") oppositions fail to overcome the exposed defects in Plaintiff's First Amended Complaint ("FAC").

*First*, Plaintiff does not dispute he failed to allege that: (1) he received some of the alleged emails; (2) certain time-limited sales did not end as advertised; (3) the extension of certain sales was predetermined; and (4) Papa John's, USA, Inc. and Papa John's International, Inc. (collectively, "Papa John's") had any reason to know *Plaintiff's* email address belonged to a Washington resident. Plaintiff thus fails to allege Papa John's sent emails with false or misleading subject lines in violation of Washington's Commercial Electronic Mail Act ("CEMA").

*Second*, courts in this Circuit still "follow[] the precedent set in *Sam Francis*," *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025), *appeal filed*, No. 25-1694 (9th Cir. Mar. 14, 2025), which makes clear that a state may not—as CEMA does—*regulate transactions occurring wholly outside its borders*, even if the statute relies on a residency hook. *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015). Additionally, CEMA's nationwide deterrent effect on commercial emails is excessive compared to any putative local benefits, further violating the dormant Commerce Clause.

*Third*, neither Plaintiff nor the State show that Plaintiff's allegations fall within CAN-SPAM's narrow preemption exception. At most, the emails identified are *misleading*, not false or deceptive. Moreover, Plaintiff does not even try to allege knowledge or injury. Most importantly, he fails to allege materiality—which he concedes is required to avoid preemption.

*Fourth*, Plaintiff concedes his Washington Consumer Protection Act ("CPA") claim falls with his alleged CEMA claim. *See* Dkt. 24 ("Plaintiff-Opp.") at 25.

*Fifth*, Plaintiff does not dispute his failure to allege any facts supporting a claim for actual damages, which dooms his claim for treble damages.

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 1
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## II.   ARGUMENT

### A.   Plaintiff Fails to Allege a CEMA Violation.

#### 1.   Plaintiff Cannot Assert Claims for Emails He Did Not Receive.

Plaintiff acknowledges he failed to allege *he* received four of the 12 identified emails. Plaintiff-Opp. at 3. He then insists those four emails provide context for a "scheme" of misleading emails and asks the Court to refrain from evaluating his pleading failure. *Id.* But on a motion to dismiss, the Court must look at Plaintiff's individual CEMA claims. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009). And under CEMA, Plaintiff can bring claims only for emails he received. RCW 19.190.040 (allowing damages "to the recipient" of a violative email). Because Plaintiff does not allege receipt of those four emails, Plaintiff cannot assert a CEMA violation regarding them.

#### 2.   The Subject Lines Are Not False or Misleading.

On a motion to dismiss, the Court can and should evaluate whether the email subject lines are false or misleading on their face. *See Bontrager v. Showmark Media LLC*, 2014 WL 12600201, *3 (C.D. Cal. 2014).

##### a.   Advertising an Extra Pizza as "Free" is Not False or Misleading.

Plaintiff insists it is *per se* misleading to use the word "free" to describe buy-one-get-one-free ("BOGO") promotions because they are merely "discount[s]." FAC ¶¶ 46–58. Plaintiff's insistence contradicts FTC guidance.

The FTC authorizes "offer[ing] … 'Free' merchandise" so long as the free product is "based upon a ***regular price for the merchandise*** … which must be purchased by consumers in order to avail themselves of that which is represented to be 'Free.'" 16 C.F.R. § 251.1(b)(1) (emphasis added). Plaintiff does not allege Papa John's artificially inflated the price of the pizza included in the BOGO promotion. He instead suggests no BOGO promotion can be "free." *See, e.g.*, FAC ¶ 46; Plaintiff-Opp. at 4. This is wrong. *See Graiser v. Visionworks of Am., Inc.*, 2016 WL 4379301, *4 (N.D. Ohio 2016) (cited by Plaintiff-Opp. at 5) (under Ohio law, "[o]nly the

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 2
(No. 2:25-cv-01922-KKE)

supplier's 'regular price' for the goods or services may be used as the basis for a 'free' offer"); *see also Ludolph-Aliaga v. Puritan's Pride, Inc.*, 2024 WL 5186845, *5 (N.D. Cal. 2024) (BOGO promotion not deceptive because "consumers paid exactly the price stated in [Defendant's] catalog or website").

Plaintiff thus rewrites his FAC, arguing for the first time the Court cannot "***assume*** … that the pizza was offered at Papa John's' 'regular price.'" Plaintiff-Opp. at 5. Yet the FAC says nothing about the "regular price" of the paid pizza, providing no basis to infer Papa John's inflated the price through any BOGO promotion.[2] The Court should reject Plaintiff's request to ban BOGO promotions.

### b.       The Subject Lines Accurately Advertised the Timing of Sales.

Plaintiff also insists emails advertising time-limited promotions retroactively became false or misleading when Papa John's extended promotions or offered similar deals at later dates. His theory has two fatal flaws:

***First,*** Plaintiff cannot plausibly allege the subject lines were false. The emails received between April 3–6 and on May 27, 2025 do not provide end dates for the promotions. FAC ¶¶ 44–57, 61. And Plaintiff concedes the April 15, 2025 promotion ended as advertised. Plaintiff-Opp. at 6. Knowing this, Plaintiff takes issue with Papa John's, in subsequent days, offering a ***distinct*** deal involving different products. FAC ¶¶ 44–67. But Washington's Supreme Court rejected the idea that companies are prohibited from later offering similar (or better) promotions. *See Brown v. Old Navy, LLC*, 4 Wn.3d 580, 595 (2025) ("Promotions that state 'Best Deals of the Year' are not misrepresentations and do not communicate information that retroactively becomes false (and actionable) under CEMA because market conditions change such that a better sale is later available."). And CEMA does not impose liability for subject lines that purportedly become "false" after the fact, rendering irrelevant Plaintiff's citations to cases interpreting the CPA. *Id.* Additionally, many of the subject lines are—at best—inactionable,

---

[2] Plaintiff's claim also fails under his proposed test. The "public understands" BOGO promotions, 16 C.F.R. § 251.1(b)(1), so they are not "likely to mislead a reasonable consumer," Plaintiff-Opp. at 4.

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 3
(No. 2:25-cv-01922-KKE)

mere puffery. Statements like "time's running out" are too vague to be considered representations of material fact. *See Brown*, 4 Wn.3d at 596. In short, the email subject lines—on their face—are not false or misleading.

*Second*, even if it could be considered false or misleading to continue to offer promotions, Plaintiff fails to allege the April 7 promotion was predetermined (rendering the emails false or misleading when sent). Instead, Plaintiff argues the Court cannot credit *any* possible alternative explanation regarding the subsequent emails. Plaintiff-Opp. at 7 & n.3. He is wrong. Where there is a plausible alternative explanation (i.e., that Papa John's offered arguably similar promotions in response to business considerations after sending the initial emails), "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts *tending to exclude the possibility that the alternative explanation is true*, in order to render plaintiffs' allegations plausible." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (emphasis added) (citation omitted); Mot. at 7–8.

### 3. Plaintiff Fails to Allege Papa John's Knew His Email Address Belonged to a Washington Resident.

Plaintiff claims that Papa John's generally "knew it was emailing Washington residents." Plaintiff-Opp. at 8. But that is not the relevant inquiry. To bring a CEMA claim, Plaintiff must allege that Papa John's knew or had reason to know that *his* email address belonged to a Washington resident. RCW 19.190.020. While Plaintiff cites to online purchases, IP address tracking, and information from email domain registrars as potential sources of residency information for email recipients, he does not dispute that he failed to allege that any of these purported sources of information resulted in Papa John's knowing or having reason to know that *Plaintiff's email address* belonged to a Washington resident. For example, Plaintiff did not allege that *he* clicked email links while using an IP address associated with a Washington location or that *his* email domain registrar would identify him as a Washington resident if asked. Plaintiff fails to allege a CEMA violation.

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 4
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**B.    CEMA Is Invalid Under the Dormant Commerce Clause.**

Plaintiff and the State present a tangled dormant Commerce Clause analysis. They invent their own *per se* rule: that the dormant Commerce Clause applies only to state laws that economically discriminate in favor of its own residents. Dkt. 29 ("State-Opp.") at 9; Plaintiff-Opp. at 10. But the Supreme Court in *National Pork Producers Council v. Ross* "left the 'courtroom door open' to [dormant Commerce Clause] challenges premised on 'even nondiscriminatory burdens.'" 598 U.S. 356, 379–80 (2023) (citation omitted); *see also Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015) ("**Absent** discrimination, we will uphold the law 'unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" (emphasis added)).

Thus, the Court left intact "three theories" under which states can violate the dormant Commerce Clause: "(1) discrimination, (2) extraterritorial regulation, and (3) excessive burden on interstate commerce." *Ashlynn Mktg. v. Pan*, 2025 WL 1953229, *2 (S.D. Cal 2025). Unhelpfully, Plaintiff's "arguments bleed together," addressing these independent concepts simultaneously. *See Flynt v. Bonta*, 131 F.4th 918, 925–26 (9th Cir. 2025); Plaintiff-Opp. at 12–13. Plaintiff's CEMA claim fails because: (1) Plaintiff seeks to regulate entirely extraterritorial conduct; and (2) CEMA imposes excessive burdens on interstate commerce.

And, contrary to Plaintiff's protestations, this argument is proper for consideration on a motion to dismiss. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) ("affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the complaint" (citation modified)); *Sam Francis Found.*, 784 F.3d at 1323 (upholding a dormant Commerce Clause challenge to part of a California statute after the district court granted dismissal on Rule 12(b)(6) grounds).

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 5
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**1.    CEMA Regulates Entirely Extraterritorial Conduct.**

**a.    *National Pork* Did Not Overturn the Prohibition on State Regulation of Entirely Extraterritorial Conduct.**

While Plaintiff calls the dormant Commerce Clause "practically moribund," his own cases say otherwise. *See Nat'l Pork*, 598 U.S. at 395 (Roberts, C.J., concurring) ("Today's majority does not pull the plug [on the dormant Commerce Clause]"). Plaintiff's and the State's assertions that *National Pork* overruled *Healy*—or nullified District cases like *Hartman* and *Booth*—are untrue. Plaintiff-Opp. at 11; State-Opp. at 6. The fractured decision in *National Pork* merely dispelled a *per se* rule against state laws with extraterritorial ***effects***. But CEMA ***directly regulates*** conduct occurring ***wholly outside*** of Washington, which, under binding Ninth Circuit precedent, is unlawful.

In *National Pork*, the Supreme Court was asked "to fashion two new and more aggressive constitutional restrictions" in the form of *per se* rules against ***extraterritorial effects***, in the context of a statute that "regulates only products that companies choose to sell 'within' California." *See* 598 U.S. at 364, 376 n.1 (citation omitted). It thus did not address a law that directly regulated wholly out-of-state conduct. *See id.* Several courts have applied this distinction, finding *National Pork* left untouched cases concerning state laws that directly regulate out-of-state transactions:

- The "Supreme Court did not curtail the *Baldwin-Healy* line of cases" and courts in this Circuit still "follow[] the precedent set in *Sam Francis* and *Sharpsmart*." *Ass'n for Accessible Meds.*, 766 F. Supp. 3d at 1033.

- *National Pork* "did not disturb the constitutional bar on state laws that '***directly*** regulate out-of-state transactions by those with ***no*** connection to the State.'" *Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1256 n.1 (S.D. Cal. 2024) (citation modified), *reconsideration denied*, 2025 WL 1012326 (S.D. Cal. 2025).

- *National Pork* "did not change the rule that a state may not directly regulate transactions that take place wholly outside the state and have no connection to it." *Ass'n for Accessible Meds. v. Ellison*, 704 F. Supp. 3d 947, 953 (D. Minn. 2023), *aff'd*, 140 F.4th 957 (8th Cir. 2025).

*National Pork* thus maintained the longstanding principle that laws may not "directly regulate[] out-of-state transactions by those with no connection to the State." 598 U.S. at 376 n.1

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 6
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(emphasis omitted). The Ninth Circuit confirmed that because "the [*National Pork* Court] did not agree upon a 'single rationale'" for its "fractured decision,"[3] only the specific result is binding. *Iowa Pork Producers Ass'n v. Bonta*, 2024 WL 3158532, *2, *3 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2866 (2025).[4]

Thus, the *Baldwin-Healy* line of cases—and the Ninth Circuit's decision in *Sam Francis*—still stands, and makes clear that a state may not regulate transactions occurring wholly outside its borders.

### b.    *Sam Francis* **Applies Here.**

Knowing this, Plaintiff and the State wrongly characterize Papa John's as challenging the extraterritorial ***effect*** of CEMA.[5] Plaintiff-Opp. at 12; State-Opp. at 6. But CEMA applies to emails sent to Washington residents even when they are located elsewhere—thus regulating wholly out-of-state transactions and conduct. *Sam Francis*, 784 F.3d at 1323 (invalidating statute that "ha[d] no necessary connection with the state ***other than the residency of the seller***" (emphasis added)). That situation is not "hypothetical," complaints about facial challenges notwithstanding. State-Opp. at 4–5; Plaintiff-Opp. at 12. Plaintiff ***in this case*** fails to allege he was in Washington when he received the emails and seeks to represent a class of Washington residents who received the emails, disregarding class members' location on receipt. And in a facial challenge under the dormant Commerce Clause, "[s]o long as the statutory language

---

[3] As the State recognizes, "several Justices wrote separately" in *National Pork*. State-Opp. at 6.

[4] Plaintiff relies on *Flynt*, but that involved a law limiting ***licensees of California cardrooms*** from owning more than 1% of out-of-state gambling businesses. 131 F.4th at 922. The Ninth Circuit made clear *Sam Francis* is "distinguishable" because "unlike the statute in *Sam Francis*, which we characterized as 'involving regulation of wholly out-of-state conduct,' the California statutes at issue here 'regulate ***in-state conduct*** with allegedly significant out-of-state practical effects.'" *Id.* at 930 (citation modified) (citation omitted). *Flynt* therefore merely reiterated *National Pork*'s uncontroversial holding that there is no *per se* rule against state laws with extraterritorial ***effects***.

[5] *Kempf v. Fullbeauty Operations, LLC* did not address *Sam Francis* and conflated *National Pork*'s holding that there is no *per se* ban on extraterritorial ***effects*** with the argument raised here regarding regulation of entirely extraterritorial conduct. 2026 WL 395677, *6 (W.D. Wash. 2026); *see also Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2026 WL 571122, *5 (E.D. Wash. 2026) (rejecting dormant Commerce Clause argument without addressing *Sam Francis*). Defendants in both cases are seeking certification for interlocutory review by the Ninth Circuit.

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 7
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*applied* to analyze that scenario—on its face—offends the Constitution, the law must fall." *Nat'l Shooting*, 718 F. Supp. 3d at 1257.[6]

Plaintiff and the State also insist CEMA applies to residents "temporarily outside the state" because Washington "has a state interest in protecting its consumers." State-Opp. at 6–7; Plaintiff-Opp. at 12–13. But the Ninth Circuit has rejected this attempted residency hook through a state-interest justification. *See Sam Francis*, 784 F.3d at 1323 (without discussion of the California statute's purpose or benefits, holding it "violates the dormant Commerce Clause" because it "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders'" despite being limited to transactions where "***the seller resides in California*** or the sale takes place in California" (emphasis added) (citation modified)).

And contrary to the State's assertion, *Phillips Petroleum Co. v. Shutts* did not hold that a state can rely on a residency hook to regulate wholly out-of-state conduct. 472 U.S. 797, 819, 822–23 (1985). Rather, the Supreme Court ***reversed*** the state court "insofar as it held that Kansas law was applicable to all of the transactions which it sought to adjudicate" despite the defendant's significant activities in the state. *Id.* at 823. Indeed, a California federal court rejected a nearly identical, post *National Pork* attempt to evade the extraterritoriality restriction, reasoning that, "despite the State having sufficiently strong ties to the subjects of regulation (namely, attempting to regulate state residents' conduct), the Ninth Circuit struck down the statute[]" in multiple prior cases. *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d at 1033–34.[7]

---

[6] The State insists "the text of CEMA makes clear" that it is valid in the "vast majority of its intended applications." State-Opp. at 4. But CEMA's residency hook (i.e., its text) renders it unconstitutional. CEMA also potentially sweeps in ***former*** or ***occasional*** Washington residents, as it applies to defendants that "know[] or ha[ve a] reason to know" of Washington residency, an element that can be met if "information [about residency] is available, upon request" from a third party that may maintain outdated records. RCW 19.190.020.

[7] Plaintiff notes *State v. Heckel* found CEMA had "no 'sweeping extraterritorial effect.'" 143 Wn.2d 824, 838–39 (2001) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642 (1982)); Plaintiff-Opp. at 14. But *Edgar* did not require a "sweeping extraterritorial effect" and confirmed that no balancing of the local benefits is required where the conduct "takes place wholly outside of the State's borders." 457 U.S. at 642–43.

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 8
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

While the State cites *Ferguson v. Friendfinders, Inc.* to suggest "similar statutes" are permissible, the court there held "the statute would not reach conduct occurring 'wholly' outside the State" because it was limited to email sent "***via equipment located in California***." 94 Cal. App. 4th 1255, 1264–65 (2002) (emphasis added). And CEMA is not insulated from the dormant Commerce Clause because it polices electronic transactions "in the interconnected modern economy." *See* State-Opp. at 5; Plaintiff-Opp. at 12. Courts regularly apply the extraterritoriality restriction to statutes regulating communications and other intangible conduct. *See* Mot. at 11–12; *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d at 1033, 1036 (invalidating statute regulating out-of-state settlement agreements).[8]

Because Plaintiff fails to allege he was in Washington when he received each email, CEMA is invalid as applied. CEMA is also facially invalid, because, as drafted, "no set of circumstances exists under which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cnty. of S.F.*, 253 F.3d 461, 467 (9th Cir. 2001).[9] Like the statute challenged in *Sam Francis*, CEMA regulates transactions occurring out of state merely because they involve a Washington resident and therefore "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders.'" 784 F.3d at 1323 (citation omitted). CEMA is thus unconstitutional under the dormant Commerce Clause.

### 2.    CEMA Excessively Burdens Interstate Commerce.

CEMA is unconstitutional under the dormant Commerce Clause for the additional, independent reason that it excessively burdens interstate commerce. A statute is unconstitutional

---

[8] The State's worries about precedential effects are unwarranted. States continued to regulate the Internet following the decisions of *Hartman*, *Booth*, and *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1025 (E.D. Cal. 2017).

[9] The State "presumably believes that [its quote from *Wash. State Grange*] dooms a facial challenge because this statute ***could*** be applied to purely in-state commercial transactions, which a state may constitutionally regulate." *Nat'l Shooting*, 718 F. Supp. 3d at 1257. But "by that logic, a state law policing economic activity ***everywhere in the world***—including within the state—would be immune to facial attack." *Id.*

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 9
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

if "the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." *Int'l Franchise*, 803 F.3d at 399 (citation modified).[10]

CEMA's burden on interstate commerce is excessive compared to any putative local benefits. Papa John's contests the "deterrent effect on commercial speech" of "a statute that authorizes enormous statutory damages"—an "important interest[]" recognized by the Fourth Circuit, in addition to the "difficult[y] for businesses [in] determin[ing] where Internet users are located." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 356 (4th Cir. 2006). Indeed, as Congress recognized, "since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of the[] disparate [state] statutes they are required to comply." 15 U.S.C. § 7701(a)(11); *see Gordon v. Virtumundo*, 575 F.3d 1040, 1063 (9th Cir. 2009). Plaintiff's appeal to *Heckel*, 143 Wn.2d 824—a pre-CAN-SPAM decision from the dial-up internet era—fails to reckon with these significant modern interests. *Cf. Virtumundo*, 575 F.3d at 1050 ("Especially in this arena, the engine of innovation moves far more quickly and nimbly than the methodical pace of legislation.").

In contrast to the burden, CEMA's putative local benefits are minimal. CEMA was passed to provide "immediate relief to ***interactive computer service providers***" who "indicate[d] that their systems [could not] handle the volume of commercial electronic mail being sent." 1998 Wash. Sess. Laws ch. 149 (emphasis added); *see Brown*, 4 Wn.3d at 601 (Madsen J., dissenting) ("These findings tie the legislature's motivation for enacting CEMA not to e-mail recipients but to Internet service providers."). Neither the State nor Plaintiff discuss this antiquated concern. *See Brown*, 4 Wn.3d at 583 ("CEMA was enacted in 1998, during the Internet's dial-up era."). As for consumer protection, Washington's interest in regulating misleading email subject lines is

---

[10] The State argues *Pike* balancing is outdated. Yet its own citations recognize *Pike* most readily applies to "state 'regulation of activities that are inherently national or require a uniform system of regulation'"—a perfect description of nationwide commercial emails. *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019) (citation omitted) (cited by State-Opp. at 9).

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 10
(No. 2:25-cv-01922-KKE)

minimal against the backdrop of an existing federal standard addressing the same conduct. *See* 15 U.S.C. § 7704(a)(2).[11]

### C.      CAN-SPAM Preempts Plaintiff's Broad Application of CEMA.

Plaintiff's CEMA claim does not fall within the "limited, narrow exception" to CAN-SPAM preemption, reserved only for "traditionally tortious or wrongful conduct" encompassed in "falsity or deception." *Virtumundo*, 575 F.3d at 1061–62.

### 1.      CAN-SPAM Preempts CEMA's Prohibition on Incomplete Subject Lines.

Under CEMA, Washington courts cannot consider the body of the email. *Brown*, 4 Wn.3d at 592. But a subject line is inherently limited. It cannot—and is not designed to—provide the level of detail required to eliminate any creative misinterpretation that Plaintiff's attorneys might dream up. *See* Mot. at 17–18; *cf. Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1065 (9th Cir. 2016) (holding email headers were not misleading under CAN-SPAM because "the body of the messages included both Power's name and a link to the Power website"). Any time the body of the email adds clarity or context to the subject line, the email could theoretically be construed as false or misleading. This cannot be the law. CEMA is thus preempted on its face.[12]

### 2.      "Misleading" Is Broader than "Falsity or Deception."

Plaintiff and the State conflate "misleading" with "falsity or deception." But it is undisputed that CAN-SPAM's exception is limited to laws that "prohibit[] falsity or deception" (Plaintiff-Opp. at 15); CEMA, on the other hand, prohibits only "false or misleading" subject

---

[11] CAN-SPAM does not insulate CEMA from the dormant Commerce Clause. *Contra* Plaintiff-Opp. at 9. "[F]or a state regulation to be removed from the reach of the dormant Commerce Clause, congressional intent must be ***unmistakably clear***." *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 91 (1984) (emphasis added). CAN-SPAM preempts CEMA. And being "consistent with federal policy—or even … further[ing] the goals we might believe that Congress had in mind—is an insufficient indicium of congressional intent." *Id.* at 92.

[12] CAN-SPAM's legislative history does not endorse state laws that consider ***only*** the subject line. Plaintiff-Opp. at 15. CAN-SPAM's Senate Report specifies the preemption exemption applies to deceptive "content in commercial e-mail." S. Rep. No. 108-102 at 21 (2003).

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 11 (No. 2:25-cv-01922-KKE)

lines. *Id.* Moreover, a statement does not need to be literally false to mislead. *See id.* at 4. In other words, not all misleading subject lines are necessarily false or deceptive.

The State insists these concepts are "harmonious." *See* State-Opp. at 15–16; Plaintiff-Opp. at 20. But federal courts have recognized that deception requires more than just misleading information:

- "***When an advertisement is*** not literally false, but is ***misleading***, '***proof that the advertising actually conveyed the implied message and thereby deceived*** a significant portion of the recipients becomes critical.'" *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 3471476, *4 (W.D. Wash. 2011) (emphasis added) (citation omitted).

- "[T]he California code has been defined as ***prohibitive of 'deceptive' header information only, thereby creating a more onerous burden on a plaintiff than the 'materially misleading' standard*** of the CAN–SPAM Act and thereby avoiding pre-emption by the CAN–SPAM Act." *Zoobuh, Inc. v. Better Broad., LLC.*, 2013 WL 2407669, *5 (D. Utah 2013) (emphasis added).

- "[F]alse and misleading are two different things. … ***[B]asic logic dictates that at least some misleading statements are not false***." *Thompson v. United States*, 604 U.S. 408, 413 (2025) (emphasis added).

CAN-SPAM confirms this distinction. As Plaintiff and the State note, the statute uses the word "mislead" in a separate section under a heading titled "prohibition of deceptive subject headings." 15 U.S.C. § 7704(a)(2); *see* Plaintiff-Opp. at 20; State-Opp. at 17. But liability arises under this section only where the party has "***knowledge*** fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, ***about a material fact*** regarding the contents or subject matter of the message." 15 U.S.C. § 7704(a)(2) (emphasis added). CEMA contains no similar requirements, purporting to impose strict liability on the sender of an email if the recipient deems it misleading. *See Virtumundo*, 575 F.3d at 1063.

*Virtumundo* further recognizes the distinction between "misleading" and "deceptive." There, the Ninth Circuit held that a defendant's practices must be ***actually deceptive*** for a CEMA claim to be excepted from preemption. *See id.* at 1064 (claims preempted because they "relate to, at most, non-deceptive statements or omissions"). Reviewing Washington law, the court defined "misrepresent"—the standard used in Subsection 1(a)—as "representing incorrectly: to give a

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 12
(No. 2:25-cv-01922-KKE)

false, imperfect or ***misleading*** representation." *Id.* at 1059 (emphasis added) (citation omitted). The claim was preempted because such "broad definitions extend CEMA's prohibitive reach and purport to regulate a vast array of non-deceptive acts and practices"—including "imperfect representations, or immaterial misstatements." *Id.*

The same logic applies to Subsection 1(b), which also invokes a bare "misleading" standard. *Compare* RCW 19.190.020(1)(a) (forbidding header information that "misrepresents or obscures"), *with* RCW 19.190.020(1)(b) (forbidding commercial email that "[c]ontains false or misleading information in the subject line"). Both subsections capture conduct that is neither false nor deceptive.[13] And while "state courts" could have "ultimately mold[ed] CEMA's broad language so as to cabin its breadth," *Virtumundo*, 575 F.3d at 1059, *Brown* did the opposite by broadly expanding CEMA's scope. 4 Wn.3d at 593.[14] Because "***any*** … misleading information" in a subject line violates CEMA, no matter its capacity for deception, *id.* at 583, the statute necessarily covers the sort of "imperfect … []statements" that states cannot regulate under CAN-SPAM. *Virtumundo*, 575 F.3d at 1059. Thus, claims under Subsection 1(b) which are based on subject lines that are merely "misleading" are preempted.

As Plaintiff acknowledges, the Court must examine the specific claim he pled, not merely the elements of the statute. *See* Plaintiff-Opp. at 17; *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (holding a state law claim is preempted "as applied" if the specific claim pled is preempted, even if the statute might be valid in other circumstances); *Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, *9 (W.D. Wash. 2008) (rejecting reliance on CEMA's text

---

[13] For these reasons, the recent orders in this and the Eastern District respectfully erred in holding *Virtumundo*'s reasoning was limited to Subsection 1(a). *See Ulta*, 2026 WL 571122, *3–4; *Harrington v. Vineyard Vines, LLC*, 2025 WL 3677479, *1 (W.D. Wash. 2025), *recons. denied*, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026); *Ma v. Nike, Inc.*, 2026 WL 100731, *2 (W.D. Wash. 2026); *Kempf*, 2026 WL 395677, *4; *Agnew v. Macy's Retail Holdings, LLC*, 2026 WL 764140, *1 (W.D. Wash. 2026); *Jerde v. Bylt LLC*, 2026 WL 415445, *1 (W.D. Wash. 2026).

[14] Until recently, courts understood CEMA's email subject provision to be limited to "false and misleading information as to the nature of the email, i.e. that the email is an advertisement." *See Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082, 1092 (W.D. Wash. 2023). More than 80 putative class actions (including this one) have been filed since *Brown* rejected *Chen* as too narrow. *See Brown*, 4 Wn.3d at 593.

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 13
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

and dismissing claim after examining the pleaded facts, which alleged at most "bare error" rather than "falsity or deception"), *aff'd sub nom.*, *Ferguson v. Active Response Grp.*, 348 F. App'x 255 (9th Cir. 2009). Here, Plaintiff alleges email subject lines which are neither deceptive nor literally false, which makes this case different from *Harrington*, *Ma*, *Ulta*, *Agnew*, *Kempf*, and *Jerde*. *See* Section II.A.2.[15] Thus, at most, Papa John's' emails could "give a wrong impression," the type of error that falls outside of CAN-SPAM's savings clause. *Mislead*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/mislead (last accessed Apr. 9, 2026).

Even if CEMA's requirement for "misleading" language referred to "deceptive" language, Washington courts recognize that "implicit in [deceptive] is 'the understanding that the actor ***misrepresented*** something of ***material importance***.'" *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 166 (2007) (emphasis added) (citation omitted), *aff'd sub nom.*, *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27 (2009). Plaintiff's allegations fail to meet that standard. *Supra* Section II.A.2. Accordingly, his claim is preempted.

### 3. Plaintiff Admits He Must Allege Papa John's' Statements Were Material to Avoid Preemption.

Plaintiff concedes the subject lines must be material to escape preemption. Plaintiff-Opp. at 17.[16] The parties, however, disagree regarding whether the statement must be material to the plaintiff or to a reasonable consumer. Under either standard, Plaintiff fails to adequately allege a claim.[17]

---

[15] *Harrington* and *Kempf* followed the analysis from *Gordon v. Impulse Marketing Group, Inc.*, 375 F. Supp. 2d 1040 (E.D. Wash. 2005), despite its overruled holding that ***both*** of CEMA's subsections survived CAN-SPAM preemption. *See Harrington*, 2025 WL 3677479, *1; *Kempf*, 2026 WL 395677, *4.

[16] The State apparently claims all state consumer protection statutes survive CAN-SPAM preemption. State-Opp. at 12–13. It points to legislative history stating that "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern" of complying with multiple state laws, "because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." *Id.* But Congress's reference to "[s]tatutes that prohibit ***fraud*** and deception" underscores the need to require something more than bare misleading statements.

[17] The State twists *Brown*, conflating the concepts of puffery and materiality. State-Opp. at 6, 19; Plaintiff-Opp. at 21. *Brown* expanded liability for "***any*** false or misleading information" in subject lines while fully acknowledging the "meaning of '[c]ontains false or misleading information in the subject line' may be broad." 4 Wn.3d at 593, 596. It did not "confirm[]" CEMA only creates liability for deceptive statements under CAN-SPAM, as the majority opinion does not mention CAN-SPAM at all.

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 14
(No. 2:25-cv-01922-KKE)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The emails must also be material ***to the recipient***. *Silverstein v. Keynetics Inc.*, 2016 WL 7475616, \*4 (N.D. Cal. 2016) (email headers were immaterial because plaintiff did "not allege that the individuals listed in the 'from' name fields were actually known to him"), *aff'd*, 727 F. App'x 244, 246 (9th Cir. 2018) (claim preempted by CAN-SPAM because "Silverstein [did not] allege that the 'From' names ***deceived him***" (emphasis added)). Plaintiff and the State reiterate this point by citing cases involving a California anti-spam statute that requires materiality ***and*** knowledge by the defendant.[18]

Plaintiff appeals to the materiality standard from *Kousisis v. United States*, 605 U.S. 114, 131 (2025), i.e., that a fact is material if a reasonable person would attach importance to it in how they proceed. But *Kousisis* holds materiality "[r]esembl[es] a but-for standard, … ask[ing] whether the misrepresentation 'constitut[ed] an inducement or motive' to enter into a transaction." *Id.* (citation omitted). Thus, simply receiving an email—which Plaintiff does not allege he ever read—does not make it material to him ***or anyone***, even under *Kousisis*.[19] And the advertisements are not material simply because Plaintiff is a "consumer." Under Plaintiff's logic, ***any*** marketing email would be excepted from CAN-SPAM preemption. Washington courts accordingly require more than materiality in the abstract: the statement must be material ***to the plaintiff***. Mot. at 22.

Regardless, the emails are immaterial under Plaintiff's reasonable-person standard because "[a] material fact is one that not only influences and affects the transaction, but also goes to its ***very essence and substance***." 16A Wash. Prac., Tort Law & Practice § 19:3 (5th ed. 2025) (emphasis added). Plaintiff argues at most that the subject lines may mislead a consumer as to

---

[18] *See Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 941 (N.D. Cal. 2009) (analyzing a statute barring subject lines "that a person ***knows*** would be *likely to mislead a recipient*, acting reasonably under the circumstances, about a ***material fact*** regarding the contents or subject matter of the message" (emphasis added)); *Asis Internet Servs. v. Member Source Media, LLC*, 2010 WL 1610066, \*5 (N.D. Cal. 2010) (stressing defendant's "intentional deception" to its holding that plaintiff's claim arose from a traditional tort theory and thus was not preempted); *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, \*11–13 (N.D. Cal. 2010) ("material, intentional misrepresentation[s]," "intentional deception," and "knowing" misrepresentations required to avoid preemption).

[19] *Kousisis* concerned wire fraud and explicitly chose not to define materiality. 605 U.S. at 132.

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 15
(No. 2:25-cv-01922-KKE)

the timing of sales. Unlike quality, price, or quantity, the timing of a purchase has no impact on the fundamentals of the bargain. Either way, consumers receive the same deal for the same price. *See Montes v. Sparc Group LLC*, No. 104162-4, slip op. at 2 (Wash. Apr. 2, 2026) (holding consumer "does not suffer an injury" under the CPA when they purchase, obtain, and keep "the fungible product [they] sought to obtain" even if the seller misrepresented information about price history).

Because Plaintiff cannot allege the subject lines were material, his CEMA claim is preempted.[20]

### 4. Plaintiff Cannot Allege Knowledge or Injury.

In admitting materiality is necessary to avoid preemption, Plaintiff also implicitly recognizes—as *Virtumundo* makes clear—that a claim must advance elements of "traditional tort theories such as claims arising from fraud or deception" to evade preemption. 575 F.3d at 1061–63. Yet Plaintiff fails to allege knowledge or injury.[21] His claim should be dismissed accordingly.

*No Knowledge.* The FAC merely alleges Papa John's extended a sale and offered various sales promotions. FAC ¶¶ 41–69. Rather than knowledge, those allegations amount to a rehash of Plaintiff's incorrect assumption that it is *per se* illegal to offer periodic discounts. And they fall well short of the standards articulated in CAN-SPAM or at common law. *See* 15 U.S.C. § 7704(a)(2) (requiring "actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead"); *Adams v.*

---

[20] Again, affirmative defenses may form the basis for dismissal under Rule 12(b)(6). *Sams*, 713 F.3d at 1179; *see also Silverstein*, 2016 WL 7475616, *4 (granting a motion to dismiss where emails did "not amount to material falsity or deception that is sufficient to avoid preemption").

[21] Plaintiff insists he need not allege knowledge or injury due to CAN-SPAM's "***disjunctive*** references to 'falsity ***or*** deception.'" Plaintiff-Opp. at 23. And the State argues consumer protection statutes cannot sound in fraud. State-Opp. at 19 n.6. Both arguments conflict with *Virtumundo*'s statutory construction. *See* 575 F.3d at 1062 ("Reading 'falsity' ***in conjunction with*** 'deception,' which connotes a type of tort action based on misrepresentations," CAN-SPAM's preemption exemption "refers to 'traditionally tortious or wrongful conduct.'" (emphasis added)).

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 16
(No. 2:25-cv-01922-KKE)

*King County*, 164 Wn.2d 640, 662 (2008) (fraud requires "the speaker's knowledge of … falsity").[22]

*No Injury.* Plaintiff admits he was "not in any way misled or deceived," *Virtumundo*, 575 F.3d at 1063, claiming instead that receiving an unread email is injury enough. Plaintiff-Opp. at 23. But claims which must "sound in tort" require, at a minimum, actual harm. *Omega*, 469 F.3d at 354; *Virtumundo*, 575 F.3d at 1064.

**D.    Plaintiff Admits His CPA Claim Fails If His CEMA Claim Fails.**

Plaintiff's Opposition acknowledges his CPA claim rises or falls with his CEMA claim. *See* Plaintiff-Opp. at 25. Because Plaintiff fails to allege a CEMA violation, the Court should dismiss his CPA claim. Mot. at 23–24.

**E.    Plaintiff's Claim for Actual and Treble Damages Fails.**

Plaintiff does not dispute his failure to allege that he sustained actual damages. Because the "complaint lacks any factual allegations that would support a finding of actual damages," Plaintiff's claim for actual damages must be dismissed. *Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011).

Plaintiff likewise does not dispute that Washington law permits treble damages only upon actual damages awards. Thus, his "failure to show actual monetary damages precludes the recovery of treble damages under the CPA." *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 565 (1992). And courts routinely consider "whether [to] dismiss … treble damages request[s] under Rule 12(b)(6)." *Jones v. County of San Bernardino*, 2022 WL 3138880, *7 (C.D. Cal. 2022) (dismissing claim for treble damages barred by statute); *Jang v. Life Ins. Co.*, 2017 WL 11632250, *3 (C.D. Cal. 2017) (dismissing request for treble damages because there was "no statutory basis").

---

[22] Recognizing this deficiency, Washington recently codified a knowledge requirement into CEMA and reduced statutory damages per email to $100. HB 2274 (2026).

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 17
(No. 2:25-cv-01922-KKE)

### III.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's FAC with prejudice, as he cannot cure the fundamental defects in his claims (and does not claim so in his opposition), and he has already amended his complaint once.

DATED this 10th day of April, 2026.

Davis Wright Tremaine LLP
**Attorneys for Defendants Papa John's USA, Inc. and Papa John's International, Inc.**

By _s/ Lauren B. Rainwater_
    Lauren B. Rainwater, WSBA #43625
    Rachel Herd, WSBA #50339
    Caitlyn Courtney, WSBA #62344
    Joshua Peck, WSBA #64328
    920 Fifth Avenue, Suite 3300
    Seattle, WA 98104-1610
    Telephone: 206-622-3150
    E-mail: laurenrainwater@dwt.com
    E-mail: rachelherd@dwt.com
    E-mail: caitlyncourtney@dwt.com
    E-mail: joshpeck@dwt.com

_I certify that this memorandum contains 6,295 words in compliance with the Local Civil Rules._

DEFS.' REPLY I.S.O. MOT. TO DISMISS FIRST AMENDED COMPLAINT – 18
(No. 2:25-cv-01922-KKE)